Reed, P. J.,
delivered the opinion of the court.
No. new factor or element was brought into the case by the new.'trial. The court regarded the decision of this court as conclusive, upon the evidence introduced upon the first trial. There was no new evidence. It was stipulated that the evidence of William. Youtz, a new witness for plaintiff, would be the same as plaintiff’s. Such stipulations are to be discouraged, as being too vague and indefinite. There was much in plaintiff’s testimony that others could know nothing about, but it must.be presumed that the witness would testify the same in regard to the facts and circumstances attending the quitting of the employment by the plaintiff. The evidence was conflicting and contradictory, — that of the plaintiff that he was arbitrarily discharged ; that of the defendant that he left voluntarily, and that his conduct and service had not been satisfactory, and, failing to reform it, he was discharged. In my'view'of the case, it was immaterial which was the fact. For the purposes of this decision, as in the former case, the' contention of the plaintiff that he was discharged will be adopted. The first contention'of plaintiff’s counsel is that under the answer as made there was no issue in regard to the satisfactory character of plaintiff’s services.
, The allegations in the complaint are: “ That on the 20th day of August, 1888, the plaintiff entered the service of the defendants under the said contract, and served until the time hereafter mentioned, discharging all of his said duties faith *297 -fully, and performing all the terms and conditions of said contract on his part, and was willing, and ready to continue in such service, and comply with all the conditions of said .contract during all the time mentioned in said contract.
“That on the 9th day of February, 1889, although the plaintiff' was ready and willing to remain in said service, and .perform all of the conditions of said contract, for the remainder of said term, the defendant refused to suffer the plaintiff to continue in their employ or perform the conditions of said contract, and wrongfully discharged the plaintiff therefrom, without any reasonable cause whatever, and has thence hitherto refused to employ the plaintiff for the remainder of said term.”
Disregarding the allegations in the answer in regard to .plaintiff’s having voluntarily quit the .employment, we come to the following: '•'■Deny that plaintiff rendered good or satis- . factory service as in said complaint stated, and on the contrary allege that he did not render good service, and that the samp was not satisfactory,” which clearly forms an issue with the paragraphs of the complaint stated. . Counsel seems to labor under the misapprehension that defendants, having alleged that plaintiff was not discharged, but quit voluntarily, that they were precluded from setting up any defense or contesting the demand upon other grounds. Such is not the law of pleading under the code. Several seeming antagonistic and contradictory defenses may be pleaded.* They may be new matter, not responsive to any allegations in the complaint; matters which at common- law were considered in “ avoidance,” and if not replied to would be taken as confessed. One fundamental fact appears to have been overlooked: Plaintiff declared upon the contract; set it out in hcec verba in his complaint as a basis of recovery. He alleged full compliance, and could only recover upon full proof of it. The defendants alleged non compliance and failure to perform it. The issue of whether plaintiff quit voluntarily or was discharged was not the only or controlling issue. The evidence upon that point was conflicting, contradictory; but, admitting that *298 he was discharged, as the jury evidently found, then the right to discharge would control, and that would entirely depend upon the legal construction of the contract.
The instruction which was claimed to have been erroneous appears to be the correct construction warranted by the wording of the document, and well sustained by authority. It was:
“ The court instructs you that, under the contract in evidence in this case, the plaintiff contracted to render satisfactory service to defendants, and the defendants had the right to discharge the plaintiff at any time when the service of the plaintiff was not satisfactory to them; but, to entitle defendants to discharge plaintiff on that ground, the claim made by them that such services were not satisfactory must be made in good faith — that is, the defendants must have been really dissatisfied with the service of the plaintiff to authorize his discharge upon that ground. And if you believe from the evidence that the defendants discharged the plaintiff because they were really dissatisfied with the services in the line of his employment, then you must find for ■the defendants, and it is not necessary that the defendants should have any cause for such dissatisfaction; but if you believe from the evidence that defendants were not really dissatisfied with the service of the plaintiff in the line of his employment, and that such claim is not made in good faith, then defendants were not authorized to discharge the plaintiff on that ground.”
It appears to have been entirely disregarded by the jury, for, taking all the testimony, that of both plaintiff and defendant, and it establishes the fact that under the existing circumstances, and as they had for some time existed, the performance of the duties and services could not be satisfactory to either party by reason of continued jarring and friction, while the proper prosecution of the business of defendants was so intimately dependent upon the chief cook and his subordinates, employed by him, that any want of harmony or laxity of discipline was of necessity destructive of business.
*299 The evidence clearly shows that up to the time the gas range was put in the work of plaintiff was satisfactory. After it was put in there was revolt, and attempt to compel removal; and the fact must be remembered that plaintiff was responsible for the entire management; hired and discharged subordinates, and following his lead, the whole troop made war upon the gas range.
The evidence of plaintiff is subject to grave criticism. In regard to what occurred between Bush and himself 'he says : “Bush said, ‘You get your money and get out. * * * Get out of this place. Pack up your things and get out of here.’ ” He afterwards testified: “ He said, ‘ Well, John, you need not consider yourself discharged; ’ ” but he went.
Mr. Bush testified: “ I found the dinner all ready, and the hour for serving the dinner having arrived, and everything off the gas range and on the steam tables for serving, I found the gas, as usual, turned on at full head. I walked around and turned it off, and said, in a very quiet way, ‘ John, I don’t want you to use this gas except when you have use for it. Don’t have it turned on in this way. I have been to Chicago and other places and see$, them work these, and I know all about it. I know I ought to be able to tell you.’ He said, ‘ If you know so damned much about it, you don’t need my services.’ I said, ‘No, sir, I don’t,’ and walked out of the kitchen. That was everything that passed between Koll and myself.”
There is one significant fact in connection with what occurred. Plaintiff testified: “ Bush said, ‘ Pack up your things and get out of here.’ I says, ‘ All right,’ and then, at that time, the eoolcs jumped up that were eating their lunch, and they said if I was discharged they would quit with me.”
Plaintiff claimed that the issue was whether plaintiff had quit or had been discharged, and yet not one of the entire corps of cooks who were present at the time was called to substantiate plaintiff’s testimony. The only witness called to support plaintiff was Joseph Holstein, and he in a vague and indefinite manner as to what he had heard, and was not present at *300 the altercation. Defendants testified that one means used to compel the abandonment of the gas range was the unnecessary and wasteful use of gas, and at the time of the trouble Bush testified it was on in full force and he shut it off. This is undisputed, and plaintiff said, “ I remember now that dinner was ready right then — with the exception of a little seasoning of different dishes, everything was ready.”, He also testified that as fast as cooking was completed the dishes were taken off the range and placed on a steam chest; consequently, at the time, it was a useless burning of gas. It will be observed that upon the original trial the entire cas.e rested upon the uncorroborated testimony of plaintiff, contradicted by Bush, and in important matters by Morse.
In construing the contract it is elaborately urged that the clause of the contract, “ The said party of the second part agrees to give his entire time and attention to the business for which he is employed, and to render good and satisfactory service,” is meaningless, or means something else. The language is clear and unequivocal. It was an ex parte agreement on the part of the. plaintiff that his services should be satisfactory. To whom, if noj^to his employers ? No other tribunal was .provided for to show, as is- argued, that it should have been satisfactory. The business would not admit of delay while the question was submitted to the courts or to arbitration, nor was the plaintiff to decide the question.
The clause was a part of the contract relied on. It was inserted for the purpose for which it was used. If it meant anything, it meaut what was clearly expressed, — the right of defendants to discharge, when the service was not satisfactory to them, — and all specious, ingenious and sophistical arguments by counsel, without showing some other clear and valid construction, seem a mere waste of time and words. The only logical conclusion to be deduced from them is that plaintiff should decide whether or not his work was satisfactory, and if satisfactory to himself could retain it to the end of the year. It must also be remarked that by the terms *301 of the contract the hiring was monthly, at $130 per 'month; not a lump sum for a year’s service.
The former opinion of this court can he sustained by many additional authorities.
In Wood’s Law of Master and Servant, 210, sec. 309, it is said: “ Of course, where the contract expressly provides that the master may discharge the servant during the term if he so elects, his election to discharge him is sufficient, whether with or without cause, as if he reserves the right to discharge if the servant’s services are not satisfactory, he need not assign any reason for the discharge, nor is any reason necessary beyond the bare circumstance that the master is not satisfied.” See Schouler on Dom. Rel., *612; Browne on Dom. Rel., 124.
In Spring v. Ansonia Clock Co., 24 Hun (N. Y.), 175, suit was brought for damages or unearned wages. The contract of employment was as follows:
■
“ I, George Spring, agree to work for the Ansonia Clock Company, as clock case maker, for one year from this date, for the sum of $1,200, payable in equal weekly installments; and the Ansonia Clock Company agrees to pay said Spring as above, provided his work and services shall be to their satisfaction. Should there be any disagreement the installments are to be paid only to the time of such disagreement, unless an amicable settlement can be arranged.”
Under this agreement the plaintiff performed services from its date to the first day of December following, when he was discharged without assignment of any cause, except he was not the man the company wanted.
At the close of the plaintiff’s testimony the complaint was dismissed. Upon appeal the unanimous opinion of the court was:
“ Thfe plaintiff complains of this disposition of the case, and insists that under the contract some cause should have been assigned for his dismission, and that the contract bestowed on the defendant no power to discharge him without the assignment of a reason. We cannot yield assent to such construction. Without the provision for that purpose intro *302 duced -in the contract, the law secured to the defendant the right to discharge the plaintiff at any time for cause, and it must he assumed that the provision on that subject was inserted in the contract to enable the defendant to exercise more power in discharging than could have been exerted in its absence. The contract of the defendant to pay is subject to the proviso that the services shall be to its satisfaction, and that fact is subject to no determination but the will of the company expressed through the proper agency. The determination of the question whether the services of the plaintiff under this contract were satisfactory belonged entirely to the company, subject to no control from the courts. The will of the company is the only tribunal to which the question can be referred.”
The following by Barnard, P. J., concurred in by the other members of the court:
“ The fair import of the agreement in writing between the parties was that the hiring was to.be for one year, provided the plaintiff suited the defendant as a workman. The paper did not leave the reason for the discharge open to dispute. In case the defendant should be dissatisfied with the plaintiff’s ‘ work and services,’ then the right upon plaintiff’s part to wages should cease. In other words, the employment was during the pleasure of the defendant. The complaint was, therefore, properly dismissed and the judgment should be affirmed, with costs.” See, also, 2 Pars, on Cont., sec. 59; Tyler v. Ames, 6 Lan. (N. Y.) 280; Hart v. Hart, 22 Barb. (N. Y.) 606; Andrews v. Belfield, 2 C. B. (N. S.) 779; Gibson v. Cranage, 39 Mich. 49; Wood v. Smith, 50 Mich. 565; McClure v. Briggs, 58 Vt. 82; Ventilator Co. v. Chicago, 66 Wis. 218; Singerly v. Thayer, 108 Pa. St. 291; Seeley v. Welles, 120 Pa. St. 69.
Aside from the right to discharge reserved in the contract, the testimony establishes existing conditions — insubordination and disregard of orders — warranting a discharge, and in the business of defendants, imperatively demanding it.
No rule is better settled than that every contract for the *303 hire of services, whether for a month, a year, a definite or indefinite time, is subject to the right of the employer to discharge the employee for sufficient cause, then, that no future salary can be collected. Wood, Law of Mast, and Servant, secs. 118, 119; Smith, Mast. and Servant, 69; Harrington v. Bank, 1 Sup. Ct. (N. Y.) T. & C. 361; Libhart v. Wood, 1 Watts & S. (Pa.) 265; Beach v. Mullin, 5 Vroom (N. J.), 343; Champion v. Hartshorne, 9 Conn. 570; Shaw v. Charitie, 3 Carr. & Kir. (Eng.) 25; Turner v. Mason, 14 Mees. & W. (Eng.) 112; Horton v. McMurtry, 5 H. & N. (Exc.) 674; Lacy v. Osbaldiston, 8 Car. & P. 80.
The question presented was by the former decision res adjudicata, but owing to the fact that the former opinion was not unanimous, I thought it best to fully review the case, instead of referring to the former adjudication as conclusive.
The judgment of the district court will be affirmed.

Affirmed.