McCLURE BROS. *v.* THOMAS J. BRIGGS.

*Agent.    Vender.    Vendee "Satisfied."*

1.   The defendant gave a written order to the plaintiffs through their agent for an organ.  The agent seasonably carried an organ, substantially like the one ordered, to the defendant's house; but in the mean time he had bought another and refused to receive the plaintiffs'.  Negotiation ensued, and the agent gave the defendant to understand, and he did understand, that if he would let the organ be set up, the trade should be at an end, if he was not *satisfied* with it. Afterwards the defendant, without cause, *thought* that he was dissatisfied with its tone, and so notified the agent; *Held*, in action of book account, that the plaintiffs by claiming a delivery adopted a part of the agent's last transaction, and thereby the whole of it.

2.   While the vendee was bound to act honestly and give the instrument a fair trial, without feigning dissatisfaction, it was incumbent on the plaintiffs, in order to recover, to prove that the defendant was *satisfied* with the organ; and it was not enough to show that he ought to have been, and that his dissatisfaction was without good reason.

BOOK ACCOUNT.   Heard on the report of an auditor, March Term, 1885, VEAZEY, J., presiding.   Judgment for the plaintiffs.   The auditor found:

"On May 9, 1884, one Bradley applied to the defendant to purchase a parlor organ.   The negotiations resulted in the defendant giving Bradley an order.   Bradley was the agent of the plaintiffs, to whom the order was directed, to sell organs and obtain such orders.   There was no fraud in the transaction.   The order was sent to the plaintiffs, and the organ was delivered to the defendant at his home in Poultney within the time as agreed by Bradley

and was charged to the defendant on book on the day of its delivery, May 24th, 1884, at the price stated in the order, to wit: $110.

"It was a Prescott organ. Before it was delivered, the defendant was made to believe by an agent in the sale of Estey organs that the Prescott organ ordered would not be satisfactory, and was induced to buy an Estey organ; and had then bought and received an Estey organ. When Bradley arrived with this Prescott organ the defendant refused to receive it, or allow Bradley to set it up in his house. He made this refusal before he had seen it, or knew whether it was a good organ, or corresponded with the representations made by Bradley when the order was given. The refusal was induced solely by the representations of the other agent. After some talk the persuasions of Bradley overcame the defendant's objections so that he allowed Bradley to set up the organ.

"I find this organ was a good one, and filled all the representations made, with one exception, which, I find, was immaterial. . . . . . The difference, if any, was a minimum. I further find that before the defendant gave said order, Bradley showed him a case exactly like this one, and told him it should be like that, as it was; but neither of them then knew that the panels were veneered; and such a case is regarded in the organ trade as solid. I also find that the defendant's repudiation of his contract was not in fact on account of this change from the representations, but was induced as before stated.

"Another ground for defence and the one mainly relied upon was this: That although the contract was fair and absolute, and performed by the plaintiffs, yet, when the organ came as aforesaid and the defendant refused to receive it, he yielded the point and did receive it *only* upon the condition then agreed to by Bradley, that if the organ was not satisfactory he would take it away; and that the organ was not satisfactory, and Bradley was so notified.

"I do not find that Bradley said that which by a strict and critical construction would bear the interpretation which the defendant put upon it; but I do find that the defendant did understand it as above stated as claimed, and that Bradley intended he should so understand it. It was a parley between an adroit, skilful, and persistent organ agent and an uneducated, simple-minded, credulous farmer. The latter had allowed himself to be induced to repudiate his contract by a rival agent without cause, and without sharpness enough to see the wrong of the act, under the rosy tintings of the rival artist. The rival was ahead and had apparently got the field. But Bradley, though behind and nearly down, was not conquered. He had the advantage of being in the right. His rival was not present. The opportunity to turn the tables was irresistible. It was easy for *him* to say *one* thing that meant *another* to the artless and easily victimized farmer. Without saying *exactly* that the trade should be thrown up if the organ was not satisfactory, he made the defendant think he said that in substance, and that was his intention, as before stated. Under the circumstances, the fraud was about as nearly justifiable in a moral sense as any case that I can conceive of. The law may be more strict.

"The defendant afterward *thought* he was dissatisfied with the tone of the organ. He had no ground for dissatisfaction."

ORDER.

"$110.00.                    "Poultney, Vt., May 9th, 1884.
" MESSRS. McCLURE BROS.:

"Please ship to me one Prescott organ to Poultney, Vt. Style, 142 *c c*, No. —. If received in good order, I hereby agree to pay for the same as follows: Cash on or before July first, one hundred and ten dollars.

"[Signed]       T. J. BRIGGS."

*D. E. Nicholson*, for the defendant.

Had the plaintiffs withdrawn when the organ was tendered and refused, and brought suit for goods bargained and sold, the order might have made the way comparatively clear for a recovery; but an action on book account could not then have been maintained on the transaction, and the charge on book was not then legally made, and has not been aided but impaired by the subsequent complications. To sustain book account, a delivery must have been made, not simply tendered. *Hodges* v. *Fox*, 36 Vt. 74; *Read* v. *Barlow*, 1 Aik. 145; S. C. 1 Vt. 97; *Bundy* v. *Ayer*, 18 Vt. 497.

*J. C. Baker*, for the plaintiffs.

When the order was received and the organ set aside and shipped according to the terms of the contract, the sale was complete. The title in the organ passed to the defendant. Story Sales, s. 300; 2 Chit. Conn. 519. All that was required of the plaintiffs to complete this sale was to ship the organ to Poultney by the ordinary and usual common carrier. *Magruder* v. *Gage*, 33 Md. 344; S. C. 3 Am. Rep. 177.

The contract of purchase, evidenced by the written order, was not changed, and there is no intimation that the plaintiffs ever heard of this talk, or that Bradley had any authority to inject that condition into the written contract.

The plaintiffs' agent was not clothed with authority to discharge written contracts, or vary their terms. The defendant had no right to say arbitrarily and without cause that he was dissatisfied and would not pay for the organ.

It was the defendant's duty to act honestly, and in accordance with the reasonable expectations of the sellers, as implied from the contract, its subject matter, and surrounding circumstances. His dissatisfaction must be his own; must be actual, not feigned; real, not pretended. *Hartford Man'f'g Co.* v. *Brush*, 43 Vt. 528; *Daggett* v. *Johnson*, 49 Vt. 345.

Book account will lie. *Wilkins* v. *Stevens*, 8 Vt. 214; *Gas-*

*sett* v. *Andover*, 21 Vt. 343; *Perry* v. *Smith*, 22 Vt. 301; *Kent* v. *Bowker*, 38 Vt. 148; *Groot* v. *Story*, 41 Vt. 533.

The opinion of the court was delivered by

ROWELL, J.   Defendant gave a written order to plaintiffs, through Bradley, their agent, for a Prescott organ, to be paid for at a stipulated price within a time named, if received in good order.   Bradley seasonably carried an organ to defendant's house that was in all respects like the one ordered except in a slight and an immaterial particular; but defendant, having in the mean time bought and received an Estey organ from another vender, refused to receive plaintiffs' organ, or to let Bradley set it up in his house, whereupon negotiation ensued between him and Bradley, wherein Bradley gave him to understand, and he did understand, that if he would let Bradley set up the organ, the trade should be thrown up if he was not satisfied with it. On this condition, and this only, defendant allowed Bradley to set up the organ.   Afterwards defendant thought, though without cause, that he was dissatisfied with the tone of the organ, and notified Bradley of his dissatisfaction, but Bradley did not take away the organ, and plaintiffs now seek to maintain book account on the score of the delivery thus effected, on the ground, first, that the delivery must be taken to have been under the original order, as Bradley had no authority to vary it in the manner attempted; and second, if he had, that defendant, having no cause to be dissatisfied, was bound to be satisfied.

As to the first of these grounds it is sufficient to say, that though when an agent exceeds his authority his principal may repudiate the transaction altogether, yet he cannot adopt one part of it and repudiate another, but his adoption of it in part is an adoption of it as a whole.   Now book account will not lie for goods sold and not actually delivered, and so the plaintiffs seek to avail themselves of the delivery effected by Bradley in order to maintain this action, and by

thus adopting that part of the transaction they adopt and must stand by the whole of it.

As to the second ground, it is to be noted that defendant did not take the organ to see whether it answered the contract or not, for if he had, and it did, he is bound to keep and pay for it whether satisfied or not; but he took it to see whether it was satisfactory *to him* or not. Neither he nor any of his family were competent to judge as to the quality of the organ, and so he called in an expert to test it, and he told him the tone of it was good, and better than that of the Estey organ, which he seemed to like; but notwithstanding the opinion of the expert, he was so under the spell of the Estey organ vender that he still *thought* he was dissatisfied with the tone of the organ; and if he really *thought* so he *was* so, for as a man "thinketh in his heart, so is he."

But it is said that he was *bound* to be satisfied, as he had no ground to be dissatisfied. He was bound to act honestly, and to give the instrument a fair trial, and such as the seller had a right, in the circumstances, to expect he would give it, and therein to exercise such judgment and capacity as he had, for by the contract *he* was the one to be satisfied, and not another for him. If he did this and was still dissatisfied, and that dissatisfaction was real and not feigned, honest and not pretended, it is enough, and plaintiffs have not fulfilled their contract; and all these elements are gatherable from the report. This is the doctrine of *Hartford Manufacturing Co.* v. *Brush*, 43 Vt. 528, and of *Daggett* v. *Johnson*, 49 Vt. 345. In the former case the defendant was required to bring to the trial of the evaporator only honesty of purpose and judgment according to his capacity, to ascertain his own wishes, and was not required to exercise even ordinary skill and judgment in making his determination. *Daggett* v. *Johnson* turned on an error in the admission of testimony; but Judge REDFIELD goes on to discuss the merits of the case somewhat, following substantially in the line

of Brush's case, and citing it as authority. But *Daggett* v. *Johnson* is distinguishable in its facts from Brush's case and from this case, in that the defendant omitted to test the pans in the very respect in which he knew it was claimed their excellence consisted. In *McCarren* v. *McNulty,* 7 Gray, 139, plaintiff agreed to make a book-case for defendants of a certain kind and dimensions, in a good workmanlike manner, "to the satisfaction" of one of the defendants, and an action for work and labor in making it was held not to be maintained by proof that it was made according to the contract, without also proving that it was satisfactory to or accepted by that defendant. The court said that against the consequences resulting from his own bargain the law could not relieve the plaintiff; that having assumed the obligations and risk of the contract, his legal rights were to be ascertained and determined solely by its provisions.

In *Brown* v. *Foster,* 113 Mass. 136, plaintiff agreed to make defendant a satisfactory suit of clothes, but defendant returned them as unsatisfactory. The court said the plaintiff could recover only upon the contract as made; that even though the clothes were such that the defendant ought to have been satisfied with them, it was yet in his power to reject them as unsatisfactory, and that it was not for any one else to decide whether a refusal to accept was reasonable or not, when the contract permitted the defendant himself to decide that question.

In *Zaleski* v. *Clark,* 44 Conn. 218, plaintiff made a plaster bust of defendant's deceased husband under a contract that she was not bound to take it unless she was satisfied with it. When it was finished she was not satisfied with it and refused to accept it. It was found that the bust was a fine piece of work, a correct copy of a photograph furnished by the defendant, and that it accurately portrayed the features of the subject, and that the only fault found with it was that it did not have the expression of the deceased when

living, which was caused by no imperfection of the work but by the nature of the material. The court said plaintiff had not fulfilled his contract; that it was not enough to say that defendant *ought* to have been satisfied, and that her dissatisfaction was unreasonable; that she, and not the court, was entitled to judge of that; that a contract to make a bust perfect in all respects, and with which the defendant *ought* to be satisfied, was one thing, and an undertaking to make one with which she *would* be satisfied, was quite another thing; that the former could be determined only by experts, and the latter could be determined only by the defendant herself.

Since the case at bar was decided, the very recent case of *Singerly* v. *Thayer,* in the Supreme Court of Pennsylvania, reported in 25 Am. Law Reg. N. S. 14, has fallen under my notice, with the note thereto. There the defendant in error agreed to put in an elevator for plaintiff in error, "warranted satisfactory in every respect." After trying it defendant refused to accept it, and it was held that if he acted in good faith, he was by the terms of the contract the sole judge whether it was satisfactory or not. The cases are there largely reviewed, and found almost unanimously to sustain the view taken by the court.

Substantially the same principle has been adopted in contracts for service when the right to terminate the contract is reserved if the party is not satisfied, in which case he may terminate it although his dissatisfaction is without cause. *Provost* v. *Harwood,* 29 Vt. 219; *Rossiter* v. *Cooper,* 23 Vt. 522; *Durgin* v. *Baker,* 32 Me. 273.

Judgment reversed, and judgment for defendant to recover his costs.