Mullen v. State.

## INTOXICATING LIQUORS.

[Harrison (7th) Circuit Court, December Term, 1907.]

Burrows, Laubie and Cook, JJ.

WILLIAM MULLEN v. STATE.

C. O. D. SALES OF INTOXICATING LIQUORS OUTSIDE OF LOCAL OPTION DISTRICT.
When a purchaser living in a local option district orders, in writing
by mail from a person lawfully engaged in the liquor business outside
of such district, a package of liquor to be sent to him for his own
use by express, C. O. D., to a station within the prescribed district,
and such purchaser received such package, pays the price for the
same and the charges for the return of the money to the express
company for the seller, the sale is complete upon the delivery of the
package to the express company by the seller, and he does not violate
the law in the prescribed district.
[Syllabus by the court.]

ERROR to Harrison common pleas court.

R. H. Minteer, for plaintiff in error.

E. S. McNamee, for defendant in error.

COOK, J.

William Mullen was indicted, convicted and sentenced for selling
intoxicating liquor in Green township, a local option township in this
county, and error is prosecuted in this court. He was tried upon
an agreed statement of facts which sets forth that he was lawfully en-
gaged in the liquor business at Amsterdam in Jefferson county, this
state. That a man by the name of Howard Dunn, residing in Green
township, sent an order by mail to Mullen to send him a case of lager
beer by express to Burton station, which was in Green township, and
on the line of the Cleveland and Alliance railroad. The order set
forth that when the beer arrived at Burton he would pay for it to the
express company when delivered to him, and also pay the expressage
on the beer and the charges of the company for sending the money,
the price of the beer, to Mullen. In a word, it was a clear C. O. D.
order on the part of Dunn. The beer was shipped by Mullen in ac-
cordance with the order; Dunn received it, paying the express com-
pany the price of the beer and the charges for returning the money to
Mullen, which was paid over to him by the express company. Mullen
at the time of expressing the beer to Dunn knew that Green township
was a local option township; but the beer was ordered by Dunn in good
faith for his own private use; and there was no combination upon the
part of Mullen and Dunn to violate the local option law of Green
township, differing in that respect from the case of *State* v. *O'Neil*,
58 Vt. 82 [56 Am. Rep. 557], reference to which is made in the case
of *O'Neil* v. *Vermont*, 144 U. S. 323 [12 Sup. Ct. Rep. 693; 36 L.
Ed. 450].

Harrison County.

By the statement of facts the question is fairly and squarely made whether or not a person under such circumstances, lawfully engaged in the liquor business, may send liquor upon an order received in writing at his place of business into a local option district by express, C. O. D.

The answer necessarily turns upon the determination of the question as to where the sale was made. Was it at Amsterdam, Jefferson county, or in Green township, Harrison county? Dunn having in his order designated the common carrier by which the beer was to be shipped, there could be no question but what the liquor was his at the time of such delivery at Amsterdam, unless the fact that it was to be shipped C. O. D., changes the rule.

*Norris* v. *State*, 25 Ohio St. 217 [18 Am. Rep. 291]. The third paragraph of the syllabus of that case is as follows:

"Where A, by false pretenses contained in a letter sent by mail, procures the owner of goods to deliver them to a designated common carrier in one county, consigned to the writer in another county, the offense of obtaining goods by false pretenses is complete in the former county, and the offense must be prosecuted therein."

In Benjamin, Sales Sec. 181, page 163, the author says:

"It is well settled that the delivery of goods to a common carrier, a *fortiori* to one specially designated by the purchaser, for conveyance to him or to a place designated by him, constitutes an actual receipt by the purchaser. In such cases the carrier is, in contemplation of law, the bailee of the person *to* whom, not *by* whom, the goods are sent, the latter in employing the carrier being considered as an agent of the former for that purpose."

It is difficult to see how the order of the purchaser that the goods should be sent C. O. D. would in any manner change the rule. He had directed his agent to whom the goods should be delivered at the place of consignment and the mere fact that he had elected to send the purchase price back by that agent to the seller when it had delivered the goods to him would not seem to affect the general rule in any way.

It is said that the goods are not the goods of the purchaser until manually delivered to him. Not by any means. The goods are his upon delivery to the carrier. The seller simply has a technical claim upon the goods to insure the payment of the purchase price.

As held in *Commonwealth* v. *Fleming*, 130 Pa. St. 138 [18 Atl. Rep. 622; 5 L. R. A. 470; 17 Am. St. Rep. 763]:

"An order from a seller to a carrier to collect on delivery

Mullen v. State.

is a mere provision for retention of the seller's lien; if accepted it creates a contract between the seller and the carrier, on breach of which by the latter, the seller may recover the price from him; but it does not make payment by the vendee a condition precedent to delivery, so that the seller may reclaim goods delivered by the carrier without payment.''

The carrier is the agent of the purchaser throughout. He had designated it as such; it was to receive the goods and deliver them to him; it was to receive the purchase price and carry the same back to the seller; for all of which services the purchaser was to pay the charges. There is nothing unlawful in this service, even if it should be held the carrier was the agent of both parties. It would in no sense be such a double agency as to make it improper. No such diversity of interest whatever as to make it antagonistic.

That in such cases the sale is fully completed when the liquor is delivered to the common carrier, subject only to the technical lien of the seller that it must not be delivered by the carrier to the purchaser until the purchase price is paid, is in accordance with the general tenor of the decisions in the different states.

In 17 Am. & Eng. Enc. Law (2 ed.) 300, it is said:

''Where goods are shipped C. O. D.—A somewhat different question is presented when the sales are made C. O. D. There is much diversity of opinion as to whether sales of this character are to be deemed absolute sales on the part of the vendor with a provision for withholding delivery until actual payment, so as to preserve the lien for the price, or only as executory contracts of sale not completed until actual delivery into the hands of the buyer. In a number of decisions it has been held that for the purpose of determining whether the seller has violated the liquor laws in force where the buyer lives, a sale C. O. D. is not complete until delivery, acceptance, and payment of the price by the person ordering the liquors. At least so far as cases dealing with intoxicating liquors are concerned. However, the weight of authority is against the foregoing view, and it is generally held that where intoxicating liquors are ordered to be shipped C. O. D., the sale is completed when the liquor is delivered to the carrier.''

The text is fortified by decisions from a large number of states. See also, Vol. 3 of Supplement 762, where a large number of other authorities are referred to.

In Black, Intox. Liq. 434, it is said:

''A licensed dealer who receives, at his place of business, an order for liquor from a place in which he has no license, and fills it

Harrison County.

by selecting the liquor from his stock and delivering it to an express company or other carrier to be carried to the purchaser, does not violate the license law, although the carrier agrees to collect and return the price; for the sale is made at the place where the goods are separated from the general stock and delivered to the carrier, such delivery being delivery to consignee."

This author also refers to a large number of authorities in support of the text.

But is the question an open one in this state. In the case of *Athens County (Treas.)* v. *Luchs*, which went to the Supreme Court and which was decided without report, seems to be decisive of this case.

In that case Luchs was engaged in the sale of intoxicating liquors at Marietta and shipped all kinds of liquors upon express orders, C. O. D., almost weekly, sometimes twice a week, to Broadwell, Lathrop and Amesville in Athens county. To such an extent were these shipments, that there could be no question, from the record which we have examined, but what he was keeping places for the sale of intoxicating liquors at these various express offices, if the sales were made in Athens county. The auditor of Athens county put Luchs upon the tax duplicate for the payment of the Dow tax; suit was instituted in the common pleas court by the treasurer of Athens county to recover the amount so placed on the tax duplicate. Luchs defended alone upon the ground that the sales were made at his place of business in Marietta, Washington county. The court of common pleas decided in favor of Luchs, and the case was taken to the circuit court upon error where the common pleas court was affirmed, and error was thereupon prosecuted in the Supreme Court where the circuit court was affirmed. We have examined the briefs in circuit and supreme courts and no other question was made but the one: that although the orders were to send the liquor C. O. D., yet the sales were made in Washington county. We do not see that any other defense could have been made, for, if Luchs was engaged in the sale of intoxicating liquors in Athens county, as we have said he was, if the liquors were sold in that county, then under Rev. Stat. 4364-9 (Lan. 7248), he would be required to pay the tax in Athens county.

Judgment of common pleas court is reversed and the accused is discharged.

**Burrows** and **Laubie, JJ.,** concur.