MOTOR VEHICLE MANUFACTURERS ASSOCIATION OF THE UNITED STATES, INC., et al., Appellants, v STATE OF NEW YORK et al., Respondents.

Third Department, April 20, 1989

## APPEARANCES OF COUNSEL

*Hughes, Hubbard & Reed (Philip A. Lacovara, William R. Stein* and *Ross Lipman* of counsel), for appellants.

*Robert Abrams, Attorney-General (Thomas G. Conway, Peter H. Schiff* and *Rachel Kretser* of counsel), for respondents.

## OPINION OF THE COURT

Weiss, J.

This appeal focuses on the constitutional validity of the New Car Lemon Law alternative arbitration mechanism implemented by General Business Law § 198-a (k) *(see,* L 1986, ch 799, § 4, eff Jan. 1, 1987). Plaintiffs, who are trade associations representing automobile manufacturers and importers, commenced this action seeking to declare General Business Law § 198-a (k) constitutionally invalid on several bases, as well as to invalidate certain of the implementing regulations *(see,* 13 NYCRR part 300). Upon the parties' respective motions for summary judgment, Supreme Court declared both the arbitration mechanism and implementing regulations constitutionally valid as challenged. The court adhered to this position after granting plaintiffs' motion to renew and reargue. This appeal by plaintiffs ensued.

As originally enacted in 1983, the Lemon Law did not establish an informal dispute resolution mechanism. Consumers were essentially left to pursue their remedies in court or via nonbinding informal programs adopted by the various manufacturers. Responding with an inexpensive and expeditious alternative, the Legislature enacted General Business Law § 198-a (k), which reads as follows:

"Each consumer shall have the option of submitting any dispute arising under this section upon the payment of a prescribed filing fee to an alternate arbitration mechanism established pursuant to regulations promulgated hereunder by the New York state attorney general. Upon application of the consumer and payment of the filing fee, all manufacturers shall submit to such alternate arbitration.

"Such alternate arbitration shall be conducted by a professional arbitrator or arbitration firm appointed by and under regulations established by the New York state attorney general. Such mechanism shall insure the personal objectivity of its arbitrators and the right of each party to present its case, to be in attendance during any presentation made by the other party and to rebut or refute such presentation. In all other respects, such alternate arbitration mechanism shall be governed by article seventy-five of the civil practice law and rules."

This legislation creates an alternative arbitration mechanism

to be pursued at the consumer's option.[1] Participation by the manufacturer is compulsory.

Plaintiffs first maintain that the compulsory arbitration requirements of General Business Law § 198-a (k) effectively deprive automobile manufacturers of their constitutional right to trial by jury *(see,* NY Const, art I, § 2). As indicated, once a consumer exercises his option to invoke General Business Law § 198-a (k), the resulting arbitration process is compulsory with respect to the manufacturers. Moreover, judicial review is limited to the standard delineated in CPLR article 75, without provision for de novo judicial proceedings. Because compulsory arbitration is unauthorized where a right to trial by jury exists *(see, Penney v Elmira Professional Communications,* 131 AD2d 938, 939; *Glass v Thompson,* 51 AD2d 69, 73-76), the pivotal question presented is whether plaintiffs enjoy a right to jury trial in the present context. The State Constitution provides that a "[t]rial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever" (NY Const, art I, § 2). It is generally understood that only actions at law, not equitable remedies, fall within the scope of this provision *(see, Phoenix Mut. Life Ins. Co. v Conway,* 11 NY2d 367, 370; *JIHL Assocs. v Frank,* 107 AD2d 662, 663; 4 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 4101.02, 4101.08). While this distinction is easier stated than applied, our task is to properly characterize the nature of a Lemon Law action and the remedy sought *(see, Tull v United States,* 481 US 412).

■ Where a manufacturer is unable to correct a defect or condition that "substantially impairs" the value of a vehicle after a reasonable number of attempts, the consumer may opt for 1 of 2 alternative remedies: acceptance of a replacement vehicle of comparable quality or a refund of the full purchase price, plus certain fees and charges (General Business Law § 198-a [c] [1]; *see, Matter of State of New York v Ford Motor Co.,* 136 AD2d 154, *appeal dismissed* 73 NY2d 755). Plaintiffs' suggestion that replacement is simply a refund "in kind" for a

---

1. We note that the Legislature further amended General Business Law § 198-a by placing more exacting demands on the manufacturers' own dispute resolution programs *(see,* General Business Law § 198-a [g], [h], [m]). These provisions were recently declared invalid as preempted by Federal law in *Motor Vehicle Mfrs. Assn. v Abrams* (697 F Supp 726; *see also, Wolf v Ford Motor Co.,* 829 F2d 1277, 1279). The provision here under review, however, was not affected by this decision *(see, Motor Vehicle Mfrs. Assn. v Abrams, supra,* at 744).

breach of warranty claim and that specific performance does not attend a "nonunique" product is unconvincing. Notably, under the UCC, a buyer of goods may seek specific performance where "the goods are unique *or in other proper circumstances*" (UCC 2-716 [1] [emphasis supplied]). The very enactment of the Lemon Law was to afford consumers a more effective avenue of redress and may readily be considered a "proper circumstance" for equitable relief. We fully agree with Supreme Court that the concept of replacement is purely equitable in nature, akin to a direction for specific performance. The refund remedy is more problematic.

 Plaintiffs maintain that a refund claim is "virtually indistinguishable" from an action at law for "revocation of acceptance" as delineated in UCC 2-608 *(see, Merola v Atlas Lincoln Mercury,* 70 AD2d 950). Pursuant to this breach of warranty provision, a buyer may revoke his acceptance of a product and recover the purchase price, plus incidental and consequential damages (UCC 2-608, 2-711, 2-712 [1], [2]; 2-715). A recovery of the purchase price via UCC 2-608 constitutes a legal, not an equitable, remedy *(see, Motor Vehicles Mfrs. Assn. v O'Neill,* 203 Conn 63, 523 A2d 486, 494). Defendants candidly acknowledge that the Lemon Law resembles the UCC 2-608 remedy, and concede that the "substantially impairs" concept was directly borrowed from that provision. Nonetheless, defendants assert and we agree that the resemblance between these remedies does not substantiate plaintiffs' thesis.

A key distinction exists between the Lemon Law and UCC 2-608, for "revocation of acceptance" requires the buyer to first revoke acceptance of the product and then pursue an action to recover the consideration paid. In contrast, the Lemon Law does not anticipate an initial revocation of the product on the part of the buyer. The statute speaks to a manufacturer's acceptance of a vehicle from the consumer, but does not explicitly require an outright rejection of the contract by the consumer *(see,* General Business Law § 198-a [c] [1]). In effect, a UCC 2-608 action is founded *upon* a rescission, whereas a Lemon Law action is one *for* a rescission and may accurately be characterized as equitable in nature *(see, Vail v Reynolds,* 118 NY 297, 302). This conclusion is consistent with the purpose of the Lemon Law, which was clearly designed as an alternative to the traditional methods of consumer recovery *(see,* Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 198-a, at 311-315). In essence, the Lemon Law provides an

equitable alternative akin to the remedy of restitution, which serves to restore the status quo ante without mandating a literal rescission of the contract *(see,* 12 Williston, Contracts § 1455, at 20 [Jaeger 3d ed]). The Lemon Law fits squarely within the concept of restitution, a remedy "limited to 'restoring the status quo and ordering the return of that which rightfully belongs to the purchaser'" *(Tull v United States,* 481 US 412, 424, *supra,* quoting *Porter v Warner Co.,* 328 US 395, 402). The fact that incidental costs are recoverable does not compel a contrary conclusion, for a party may receive full relief in an equity action *(see, Vail v Reynolds, supra,* at 302). Notably, the Lemon Law actually poses a compromise on damages, for while incidental items are recoverable, consequential loss is not *(see,* Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 198-a, at 315). Giving due regard to the language and objective of the Lemon Law *(see, Ferres v City of New Rochelle,* 68 NY2d 446, 451), we find that the remedy is equitable in nature and no right to trial by jury has been impaired by virtue of the alternative arbitration mechanism.

■ We further reject plaintiffs' contention that the compulsory arbitration mechanism implemented by General Business Law § 198-a (k) violates their constitutional "right of access" to Supreme Court's jurisdiction *(see,* NY Const, art VI, § 7 [a]). Generally, there is no per se constitutional right of access to the civil courts *(see, Matter of Colton v Riccobono,* 67 NY2d 571, 576). Where appropriate, the Legislature may establish alternative dispute resolution mechanisms *(supra; see, e.g.,* Insurance Law § 5104 [no-fault]; Workers' Compensation Law § 11 [workers' compensation]). Plaintiffs' premise is that for claims otherwise triable in court compulsory arbitration is only viable where de novo review can be obtained in Supreme Court. We have already concluded, however, that the Lemon Law constitutes an equitable remedy to which the right to trial by jury does not attach. Moreover, we find that arbitration provides a reasonable alternative to judicial resolution of Lemon Law claims *(see, Country-Wide Ins. Co. v Harnett,* 426 F Supp 1030, 1032, *affd* 431 US 934). The Attorney-General's implementing regulations provide for adequate notice, an impartial arbitrator, and a "full and equal opportunity" for each party to present his case (13 NYCRR 300.7 [b]; 300.8 [c]; 300.13 [a]). Any award is subject to judicial review pursuant to CPLR article 75 and, given the compulsory nature of the process, must be premised on adequate evidence in the record

*(Country-Wide Ins. Co. v Harnett, supra,* at 1034; *see, Mount St. Mary's Hosp. v Catherwood,* 26 NY2d 493, 508). We recognize that the selection of a forum rests with the consumer, not the manufacturer, but given the obvious inequality in their bargaining positions, we perceive no impropriety *(see generally, Sablosky v Gordon Co.,* 73 NY2d 133, 137-139 [unilateral arbitration clause in employment contract]). Notably, a comparable option provision relative to the arbitration of no-fault disputes was upheld in *Country-Wide Ins. Co. v Harnett (supra,* at 1034).[2] In sum, the absence of a de novo review provision does not invalidate General Business Law § 198-a (k).

■ Plaintiffs' further contention that the reference of Lemon Law disputes to private arbitrators pursuant to General Business Law § 198-a (k) constitutes an unconstitutional delegation of judicial authority is similarly unpersuasive. As indicated, this is not an instance where plaintiffs have a fundamental right to a jury trial *(see, Glass v Thompson,* 51 AD2d 69, 76, *supra).* Moreover, the statute does not work an abdication of judicial responsibility. The Legislature has specifically provided for arbitration by impartial arbitrators and for judicial review of any awards. Although plaintiffs have expressed reservations on this point, we reiterate that the heightened standard of review attendant compulsory arbitration awards applies here (CPLR 7511 [b] [1] [iii]; *see, Caso v Coffey,* 41 NY2d 153; *Mount St. Mary's Hosp. v Catherwood, supra,* at 508). Given this judicial supervision, the fact that nonjudicial personnel, administered by the American Arbitration Association, adjudicate claims in the first instance does not render the mechanism constitutionally infirm *(see,* 13 NYCRR 300.4, 300.7). Nor is this format unprecedented, for the American Arbitration Association provides the forum for the resolution of no-fault insurance disputes under a similar compulsory arbitration program *(see,* 11 NYCRR 65.17 [b] [3]). In essence, the arbitration process remains within the judicial domain.

■ We turn next to the Attorney-General's implementing regulations. Plaintiffs first challenge 13 NYCRR 300.17 (c), which provides that arbitrators "shall not consider evidence that the nonconformity, defect or condition can be corrected

---

2. We note that when *Country-Wide Ins. Co. v Harnett* (426 F Supp 1030) was decided, the predecessor to Insurance Law § 5106 did not provide for de novo review; the statute has since been amended to provide for de novo adjudication where the master arbitrator's award exceeds $5,000 *(see,* L 1977, ch 892, § 13).

through further repairs". Essentially, plaintiffs maintain that the regulation inhibits a viable defense by converting the presumption of reasonableness set forth in General Business Law § 198-a (d) into an irrebuttable standard of liability. We agree. Paraphrased, the statute presumes that a reasonable effort to repair has been made where the vehicle has undergone four repair attempts or remains out of service for 30 days (General Business Law § 198-a [d] [1], [2]). The language utilized does not establish a *conclusive* presumption and yet 13 NYCRR 300.17 (c) has precisely that effect. While the Attorney-General has been delegated broad authority to implement this arbitration program, there is no authority to promulgate regulations that contravene the governing statute *(see, Matter of Harbolic v Berger,* 43 NY2d 102, 109; *Matter of New York State Superfund Coalition v New York State Dept. of Envtl. Conservation,* 144 AD2d 72, 76). Defendants' suggestion that the regulation merely serves to prevent arbitrators from directing another repair is belied by the actual regulatory language. While we agree that arbitrators may not direct further repairs, such evidence is clearly relevant to the ultimate issue of whether the consumer qualifies for a refund or replacement. Consequently, the challenged regulation must be annulled.

We do, however, agree with Supreme Court that the alternate arbitration procedure established by General Business Law § 198-a (k) is not an "adjudicatory proceeding" within the meaning of the State Administrative Procedure Act. The arbitration program is conducted by "a professional arbitrator or arbitration firm" (General Business Law § 198-a [k]), not an "agency" as defined in State Administrative Procedure Act § 102 (1). Nor is there any "on the record" requirement for the new arbitration procedure *(see,* State Administrative Procedure Act § 102 [3] [defining an "adjudicatory proceeding"]). Consequently, defendants' failure to implement the procedural safeguards set forth in State Administrative Procedure Act article 3 does not vitiate the arbitration mechanism. We further conclude that the mechanism accords the participating parties procedural due process, for manufacturers must be given timely notice of any claim (13 NYCRR 300.8 [c]); the arbitrator must be impartial (13 NYCRR 300.7 [b]); any relevant evidence may be introduced and any testimony given under oath (13 NYCRR 300.13 [b], [c]); parties may retain counsel (13 NYCRR 300.11); and the awards are subject to judicial review pursuant to CPLR article 75 (13 NYCRR

300.17 [i]) *(see,* CPLR 7506; *Country-Wide Ins. Co. v Harnett,* 426 F Supp 1030, 1033-1034, *supra).* We recognize that a complete record as set forth in State Administrative Procedure Act § 302 (1) is not required and that the arbitrator simply renders a decision "in writing" *(see,* CPLR 7507; 13 NYCRR 300.17 [a]). Nonetheless, we cannot agree that effective judicial review is precluded. Notably, the record indicates that the arbitration decision form being utilized provides for the summary of the evidence and findings of fact *(see,* 13 NYCRR 300.17 [a]). Moreover, manufacturers are not precluded from requesting a stenographic transcript *(see, Matter of Suarez [Country-Wide Ins. Co.],* 79 AD2d 591, 592). In any event, the developed record must provide a rational basis for the arbitrator's decision *(see, Caso v Coffey,* 41 NY2d 153, 156, 158, *supra; Mount St. Mary's Hosp. v Catherwood,* 26 NY2d 493, *supra; see also,* Siegel, NY Prac § 603, at 865-866). Consequently, meaningful review is assured.

In sum, we find that General Business Law § 198-a (k) passes constitutional muster and that the implementing regulations, as challenged, are valid, with the exception of 13 NYCRR 300.17 (c).

CASEY, J. P., MIKOLL, LEVINE and HARVEY, JJ., concur.

Order modified, on the law, without costs, by deleting so much thereof as declared 13 NYCRR 300.17 (c) within the Attorney-General's rule-making authority; it is declared that 13 NYCRR 300.17 (c) is invalid; and, as so modified, affirmed.