### Terry and Robert Muzzy v. Chevrolet Division, General Motors Corp.; State of Vermont, Intervenor

[571 A.2d 609]

No. 87-272

Present: Allen, C.J., Peck and Dooley, JJ., and Keyser, J. (Ret.) and Costello, D.J. (Ret.), Specially Assigned

Opinion Filed December 1, 1989

*Stephen Cosgrove*, Rutland, for Plaintiffs-Appellees.

*Jeffrey L. Amestoy*, Attorney General, and *Susan M. Sussman*, Assistant Attorney General, Montpelier, for Intervenor-Appellee State.

*Charles M. Hurt, Jr.*, of *Downs, Rachlin & Martin*, St. Johnsbury, for Defendant-Appellant.

**Dooley, J.** Terry and Robert Muzzy (appellees) purchased a new Chevrolet from an authorized General Motors Corporation dealer in February, 1985. After numerous repair attempts, appellees sought statutory remedies under the New Motor Vehicle Arbitration Act (Act), 9 V.S.A. §§ 4170–4181. The Vermont Motor Vehicle Arbitration Board (Board), created to hear consumer complaints arising under the statute, found appellees

entitled to relief. The Board ordered General Motors Corporation (GM) to refund a portion of the purchase price and other expenses. GM appealed to the Washington Superior Court, which affirmed the Board's decision. GM here contends that the superior court erred in affirming the Board's decision. We affirm.

The facts relevant to this case are brief. Appellees purchased a new vehicle from a Rutland dealer and found that it ran roughly and stalled in traffic. The dealer tried on five separate occasions in April, May and June of 1985 to repair the defect. When these attempts failed, appellees went to the Board seeking a new vehicle from GM.[1] GM made a last attempt at repair and installed a special valve. Although GM alleged that the new valve cured the defect, the Board made no finding on whether the vehicle was repaired. Appellees were dissatisfied with the results of GM's last repair attempt because the problem might reoccur and the warranty was about to expire.

On the above facts, the Board found that the vehicle had a substantial defect which affected its safety or market value. Since the vehicle was not repaired in three attempts, the Board found that appellees made out a prima facie case for relief. It found that GM's last repair attempt, whether or not successful, was not relevant because appellees were not satisfied with it.[2] Accordingly, it ordered GM to refund the purchase price, together with the amount of any interest, taxes, registration fees, credit fees and credit insurance premiums incurred by appellees.

On appeal, the superior court upheld the Board determination that the vehicle had a substantial defect which adversely affected safety or market value. It further held that although

---

[1] Appellees subsequently amended their petition to seek a refund of the purchase price. Under 9 V.S.A. § 4172(e), the consumer may choose the proper remedy between a replacement vehicle and a refund of the purchase price. There is no indication that appellant was willing to provide either remedy since it has insisted that appellees have no right to relief from the Board.

[2] One member of the five-person Board concurred on this point, noting that he was bound by an earlier decision of the Board. Another member dissented, finding that the vehicle had been repaired and, therefore, the Board could not order relief.

GM had a right to attempt a final repair, this right was subject to the consumer's satisfaction with the repair. Since the consumers were not satisfied with the final repair attempt and exercised their judgment "honestly and in good faith," the court found that they could recover. The court upheld the constitutionality of the Act against claims that it impaired the obligation of the contract and denied GM due process of law and equal protection of the laws. It affirmed the remedy fashioned by the Board except for the refund of the purchase and use tax, which it found to be beyond the authority of the Board.

On appeal in this Court, GM raises three claims of error: (1) the Board erred in holding that the test of consumer satisfaction is wholly subjective; (2) the Board failed to make findings on essential elements of the case; and (3) the Board awarded damages for items not covered by the Act. We take these claims in order after first setting out the statutory scheme and addressing the standard of review.

## I.

### Statutory Scheme

This is the second case to reach this Court under the "lemon law." The basic operation of the statute is set forth in the first case, *Pecor v. General Motors Corp.*, 150 Vt. 23, 547 A.2d 1364 (1988). In that case, we held that the consumer does not have to prove an existing defect, or warranty nonconformity, to recover under the Act. 150 Vt. at 25, 547 A.2d at 1366. Instead, the Act creates an obligation in the manufacturer to replace a motor vehicle if the manufacturer, or dealer, is unable to repair the vehicle "after a reasonable number of attempts." 9 V.S.A. § 4172(e). It presumes that a reasonable number of attempts have been made in either of two circumstances: (1) the defect has been subject to three repair attempts and "the same nonconformity continues to exist"; or (2) the vehicle has been out of service a cumulative total of 30 days during the warranty period. 9 V.S.A. § 4172(g). *Pecor* holds that if the vehicle remains out of

conformity with the warranty[3] after the reasonable number of repair attempts have been made, liability attaches and the consumer does not have to prove, and the Board does not have to find, nonconformity at the time of the Board hearing. 150 Vt. at 25–26, 547 A.2d at 1366.

This case involves another part of the statute not involved in *Pecor*. A consumer seeking a remedy under the Act may apply to the Board,[4] which must normally arbitrate the consumer's complaint within 45 days. 9 V.S.A. § 4173(c). Within this 45-day period, the manufacturer is given one final opportunity to correct the defect. 9 V.S.A. § 4173(d). The statutory language governing this opportunity is as follows:

> (d) Within the 45-day period set forth in subsection (c) of this section, the manufacturer shall have one final opportunity to correct and repair the defect which the consumer claims entitles him or her to a refund or replacement vehicle. If the consumer is satisfied with the corrective work done by the manufacturer or his delegate, the arbitration proceedings shall be terminated without prejudice to the consumer's right to request arbitration be recommenced if the repair proves unsatisfactory for the duration of the express warranty.

*Id.* GM interprets this section as establishing an objective standard so that if the defect is in fact repaired the proceedings before the Board must terminate. Appellees urge adoption of a subjective standard, with the question being whether the consumer is in fact satisfied.

## II.

### Standard of Review

The Act specifies the standard of review on an appeal from the Board. See 9 V.S.A. § 4176. Under the Act the decision of

---

[3] It is an affirmative defense that a warranty nonconformity "does not substantially impair the use, market value or safety" of the vehicle or that the nonconformity is the "result of abuse, neglect, or unauthorized modifications or alterations" of the vehicle by the consumer. 9 V.S.A. § 4172(f).

[4] The consumer may elect instead to use a dispute settlement mechanism established by the manufacturer. 9 V.S.A. § 4173(a).

the Board is "final" unless a party proves "by clear and convincing evidence" that one of four grounds apply. For purposes of this case, the only arguably applicable ground is that "the board exceeded its powers." 9 V.S.A. § 4176(a)(3).

The grounds for reversal in 9 V.S.A. § 4176 are identical in substance to those contained in 12 V.S.A. § 5677, part of the Vermont Arbitration Act.[5] Similarly, the grounds in 12 V.S.A. § 5677 are identical in substance to the judicial review provisions of the Federal Arbitration Act, 9 U.S.C. § 10(d).[6] In addition, the statutory limitations on judicial review imposed by 9 U.S.C. § 10(d) seek to "further the objective of arbitration, which is to enable parties to resolve disputes promptly and inexpensively." *Office of Supply, Government of Republic of Korea v. New York Navigation Co.*, 469 F.2d 377, 379 (2d Cir. 1972). This purpose parallels language contained in 9 V.S.A. § 4170, entitled "Legislative intent," where the Legislature declared that manufacturers ought to "provide speedy and less costly resolution of automobile warranty problems." 9 V.S.A. § 4170.

The standard of review on issues of law is very limited. We do not sit as an appellate court on errors of fact or law made by the Board. See, e.g., *Board of Directors of Maine School Administration District No. 33 v. Teachers' Association of Maine*, 395 A.2d 461, 463 (Me. 1978); see also *Matzen Construction, Inc. v. Leander Anderson Corp.*, 152 Vt. 174, 177, 565 A.2d 1320, 1322 (1989) (scope of review is to ensure proceedings fall within the boundaries of due process); *In re Subaru of America (McKelvey)*, 141 Misc. 2d 41, 532 N.Y.S.2d 617, 618 (Sup. Ct. 1988) (under New York lemon law, court will not set aside arbitration award for errors of law or fact unless award is irra-

---

[5] The Vermont Arbitration Act, 12 V.S.A. § 5677(a) provides, in pertinent part:
   Upon application of a party to confirm, modify or vacate an award, the court shall vacate an award where: . . . (3) the arbitrators exceeded their powers.
The Vermont Arbitration Act has a fifth ground not contained in 9 V.S.A. § 4176. See 12 V.S.A. § 5677(a)(5).

[6] The Federal Arbitration Act, 9 U.S.C. § 10, provides, in pertinent part:
   [T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . (d) Where the arbitrators exceeded their powers.

tional). Only under extreme circumstances can we intervene to correct an error of law. See *Freeport Construction Co. v. Star Forge, Inc.*, 61 Ill. App. 3d 999, 1006–07, 378 N.E.2d 558, 564–65 (1978). In the federal courts, an award may be vacated for an error of law only if the arbitrator manifestly disregards the law. *Wilko v. Swan*, 346 U.S. 427, 436–37 (1953); *Office of Supply, Government of Republic of Korea*, 469 F.2d at 379–80. This standard is severely limited. The Second Circuit Court of Appeals recently described it as follows:

> Although the bounds of ["manifest disregard of the law"] have never been defined, it clearly means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it. To adopt a less strict standard of judicial review would be to undermine our well established deference to arbitration as a favored method of settling disputes when agreed to by the parties. Judicial inquiry under the "manifest disregard" standard is therefore extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it.

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933–34 (2d Cir. 1986) (citations omitted).

The legislative intent is clearly that the standard of review be even narrower than that for arbitration proceedings generally. On top of the limited Arbitration Act grounds to vacate an award, the Legislature has added an elevated burden of proof. Thus, the appealing party must establish the presence of one of the grounds by "clear and convincing evidence." 9 V.S.A. § 4176(a).

GM argues against the above analysis on the basis that the hearing before the Board is a contested case under the Admin-

istrative Procedure Act, 3 V.S.A. § 801(b)(2), subject to judicial review for legal error under 3 V.S.A. § 815. While we do not dispute the applicability of the Administrative Procedure Act to Board proceedings, this conclusion does not help GM. The APA provides no specific standard of review and leaves it to statute to specify where, if anywhere, review is available. See 3 V.S.A. § 815(a). Thus, specific statutes may provide for review in superior court, see *Noble v. Delaware & Hudson Railway*, 139 Vt. 47, 49–50, 421 A.2d 1301, 1303 (1980), and can change the standard of review from that normally applicable for administrative proceedings. See *Town of Barnet v. Central Vermont Public Service Corp.*, 131 Vt. 578, 580, 313 A.2d 392, 393 (1973). Indeed, the Legislature can choose to deny judicial review entirely. See *Mason v. Thetford School Board*, 142 Vt. 495, 498, 457 A.2d 647, 649 (1983).[7]

█ We specifically reject GM's argument that the Board's interpretation of the Act is entitled to no deference in this Court. See *In re Agency of Administration*, 141 Vt. 68, 75, 444 A.2d 1349, 1352 (1982). If the Legislature is trying to tell us anything by adopting the Arbitration Act review standard in Board proceedings, it is that we must accord great deference to the Board's construction of the Act. As the Second Circuit Court of Appeals concluded in *Bobker*, we cannot overturn a Board conclusion of law because of an arguable difference of opinion regarding the meaning of the Act. See 808 F.2d at 934; cf. *Chrysler Motors Corp. v. Schachner*, 138 Misc. 2d 501, 508, 525 N.Y.S.2d 127, 132 (Sup. Ct. 1988) (under New York lemon law, defer to arbitrator's ruling of law and uphold if not irrational).

## III.

### *Last Opportunity to Repair*

The main issue in this case is whether the Board must dismiss

---

[7] GM has raised no constitutional objections to the limited scope of review in this case. Compare *Motor Vehicle Manufacturers Association v. State*, 146 A.D.2d 212, 540 N.Y.S.2d 888 (1989) (mandatory arbitration under New York lemon law denies neither right to trial by jury nor right of access to courts).

the proceeding where the manufacturer's final opportunity to repair pursuant to 9 V.S.A. § 4173(d) brings about an apparent repair although the car-owner is not satisfied. We hold that it does not and affirm the Board on its conclusion that the satisfaction standard under the statute is essentially subjective. Although we find the legal question to be fairly close, we have a number of reasons for our conclusion.

■■ Our first reason is that the Board's interpretation appears to comport best with our rules of statutory construction. In construing a statute, our primary mission is to give effect to the intent of the Legislature. *In re Spencer*, 152 Vt. 330, 336, 566 A.2d 959, 962 (1989). Where the language of the statute is clear, we must ascertain the intent from the wording of the statute using the plain, ordinary meaning of the language used. *Id.* Remedial statutes, like the "lemon law," are entitled to a liberal construction in favor of those who are intended to benefit from the legislation. See *Caledonia Record Publishing Co. v. Department of Employment & Training*, 151 Vt. 256, 261, 559 A.2d 678, 681 (1989).

We cannot say that the language used here is unambiguous.[8] There is an unresolved tension between the consumer's right to relief after a reasonable number of attempts fail to repair the vehicle and the manufacturer's right to attempt a last repair. Cf. *Kletzien v. Ford Motor Co.*, 668 F. Supp. 1225, 1228 (E.D. Wis. 1987) (statutory provisions of Wisconsin lemon law do "not fit squarely"). Nevertheless, the choice of wording is more consistent with a subjective standard than an objective one.

This Court has interpreted a similar use of the term "satisfied" in the early case of *McClure Bros. v. Briggs*, 58 Vt. 82, 2 A. 583 (1886). In *McClure Bros.*, the defendant agreed to purchase an organ from plaintiff if, on trying it, he was satisfied with it. Although an expert determined that the tone of the organ was

---

[8] GM urges us to look to the Uniform Commercial Code to construe § 4173(d). The UCC does not use the term "satisfied" or indicate how it should be construed. The one reference to contract terms involving satisfaction in comment 1 to § 2-326, 9A V.S.A. § 2-326, comment 1, indicates that the Code takes no position on whether it expresses a subjective or objective standard. Thus, we find the UCC unhelpful to the issue before the Court.

good, defendant was dissatisfied with the tone of the organ. In plaintiff's suit for the price of the organ, the Court found for defendant, rejecting plaintiff's claim that defendant should be liable because he had no reasonable grounds for dissatisfaction:

> But it is said that he was *bound* to be satisfied, as he had no ground to be dissatisfied. He was bound to act honestly, and to give the instrument a fair trial, and such as the seller had a right, in the circumstances, to expect he would give it, and therein to exercise such judgment and capacity as he had, for by the contract *he* was the one to be satisfied, and not another for him. If he did this and was still dissatisfied, and that dissatisfaction was real and not feigned, honest and not pretended, it is enough, and plaintiffs have not fulfilled their contract . . . .

*Id.* at 87, 2 A. at 584 (emphasis in original). We see no reason to construe the word "satisfied" in the lemon law differently from the way it is construed in *McClure Bros.*[9] Since there is no claim that appellees' dissatisfaction in this case is feigned or dishonest, and the trial court found it to be honest and in good faith, the *McClure Bros.* construction supports the Board's conclusion in this case.

We also note that the Legislature has considered and rejected amendments to 9 V.S.A. § 4173(d) to clearly adopt the meaning advanced by GM in this case. Both the House and Senate voted down such an amendment in 1986. 1986 House J. 364–

---

[9] The contract law has developed in other states so that an objective test of satisfaction is used for some contracts and a subjective test for others. See generally Brook, *Conditions of Personal Satisfaction in the Law of Contracts*, 27 N.Y.L. Sch. L. Rev. 103, 144–50 (1981). The Restatement expresses a preference for an objective test where "it is practicable to determine whether a reasonable person in the position of the obligor would be satisfied." Restatement (Second) of Contracts § 228 (1981). Note that a comparison to a reasonable person is a different test from that argued for by GM in this Court or before the Board. GM would determine satisfaction solely by whether the Board found the vehicle to be repaired.

Even if the Legislature intended to use the term satisfaction in the same way as it is used in § 228 of the Restatement of Contracts 2d, we would find that it supports a subjective test here because it is not "practicable" to use the objective test set forth in § 228 without expensive proof that would seriously undermine the consumer's remedy.

65; 1986 Senate J. 784–85. These amendments would have been unnecessary if the section had the meaning urged by GM.

Second, we believe the Board's construction is most consistent with legislative intent. That intent is specifically stated in 9 V.S.A. § 4170 and includes a declaration that "manufacturers, distributors and importers of new motor vehicles should be obligated to provide speedy and less costly resolution of automobile warranty problems."

GM's repair in this case was the sixth one attempted. GM asserts that the vehicle is repaired, but it is likely that a similar assertion was made in good faith after each of the five other attempts. The only way the issue can be resolved is by expert evaluations or by operation of the vehicle over time. Neither of these methods are consistent with the legislative intent. If the consumer must hire an expert to evaluate the vehicle, the remedy will be more costly, not less costly as intended by the Legislature. The dismissal sought by GM makes test operation of the vehicle over time impossible; even if possible, it would delay any remedy. In effect, GM's position leads to a treadmill of repair attempts without end, not the speedy and less costly resolution of automobile warranty problems contemplated by the Legislature.

Third, we believe that liberal construction consistent with the remedial purpose favors the Board's conclusion here. As the New Hampshire Supreme Court emphasized in *Asciolla v. Manter Oldsmobile-Pontiac, Inc.*, 117 N.H. 85, 89–90, 370 A.2d 270, 274 (1977), the purchaser of a new car expects "to receive a vehicle upon whose dependability and safety he could comfortably rely." Thus, the vehicle is more than the sum of its components. It must be reliable and operate well, day after day. What the "lemon law" really protects against is the insecurity of ownership of a vehicle that is perceived to be undependable. We share the sentiment of the Wisconsin Court of Appeals that giving the manufacturer further attempts to repair, after the failure within the "reasonable" number, can act to "eviscerate" the lemon law. *Hartlaub v. Coachman Industries,.Inc.*, 143 Wis. 2d 791, 802, 422 N.W.2d 869, 873 (Ct. App. 1988); see also *Vultaggio v. General Motors Corp.*, 145 Wis. 2d 874, 886, 429 N.W.2d

93, 97 (Ct. App. 1988) (follows *Hartlaub*). The subjective satisfaction standard of § 4173(d) protects against that evisceration and fairly responds to insecurity caused by past operation failures.[10]

■ Finally, we reiterate that we have a limited review standard here. At best, we are choosing between two arguable constructions of the Act. We believe that in such a case the Legislature intended that the Board's construction would prevail and would not be second-guessed in this Court.

## IV.

### Inadequate Findings

GM's second argument is that the Board failed to make specific findings on the nature of the defect. The Board found that the stalling condition was a "substantial defect which adversely affects either the safety or market value of the vehicle." The statute requires the Board to find a defect "which substantially impairs the use, market value, or safety of the motor vehicle to the consumer." 9 V.S.A. § 4172(e). GM notes that the Board's conclusion is not precisely that required by the statute, does not specify whether the effect is on safety or market value, and is not supported by specific findings.

We do not believe that GM's claims rise to the level of cognizable error under our limited scope of review. None of the grounds specified in 9 V.S.A. § 4176 come close to covering the claims raised by GM here. In *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972), the court, acting under the essentially identical judicial review provision of the Federal Arbitra-

---

[10] GM argues that a subjective standard denies it due process of law because it is deprived of a "neutral magistrate" to judge its case that the vehicle has been repaired. This argument fails because GM has no protected interest in prevailing if the vehicle is ultimately repaired—that is, the substantive law does not give GM the right for which it seeks procedural protections. Its argument here is akin to that advanced unsuccessfully in *Chrysler Corp. v. Texas Motor Vehicle Commission*, 755 F.2d 1192, 1200–02 (5th Cir. 1985), where the manufacturer attacked the Texas lemon law because it allowed a consumer who lost before the Texas Motor Vehicle Commissioner to reject the result and bring suit. The court noted that "[t]he judiciary cannot justify intrusion into the weighing of economic objectives and values with the single assertion that the regulatory effort has affected 'procedural rights.'" *Id.* at 1201.

tion Act, held that an arbitration award could not be vacated because the arbitrators failed to explain their reasoning. The court found that such a rule would "undermine the very purpose of arbitration, which is to provide a relatively quick, efficient and informal means of private dispute settlement." *Id.* In *Andros Compania Maritima v. Marc Rich & Co., A.G.,* 579 F.2d 691, 704 (2d Cir. 1978), the court went further and held:

> When arbitrators explain their conclusions (we reaffirmed in *Sobel* that they have no obligation to do so) in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result.

Under this standard, there is no error.

■ GM doesn't seriously claim that a vehicle that has a motor which cuts out during normal driving conditions is safe or as valuable as a vehicle without the defect. It is obvious in this case that the defect substantially impaired both safety and value. Thus, we don't even have an argument for a different result here; instead, it is an argument that technical deficiencies in the Board's conclusions should result in a new hearing. This is not the kind of error that the Legislature intended that we would review.

## V.

### Damages

GM's last claim is that the Board should not have awarded appellees a refund of the credit insurance premiums they had paid. The statute provides that when a refund is tendered, the manufacturer must include amounts for "license fees, finance charges, credit charges, registration fees and any similar charges and incidental and consequential damages." 9 V.S.A. § 4172(e). GM argues that credit insurance premiums are not fairly part of either incidental or consequential damages, primarily because appellees have received the benefit of the insurance coverage since the purchase of the vehicle.

The issue of inclusion of credit insurance premiums was indirectly addressed in *Pecor*. There, the Board awarded both a replacement vehicle and certain expenses and consequential damages, including a credit insurance premium reimbursement. We held that the manufacturer is required to pay expenses and consequential damages only if it provides a refund, and not where it provides a replacement vehicle. 150 Vt. at 27, 547 A.2d at 1367. We added that if the manufacturer failed to provide a replacement vehicle, it must "pay the refunds and damages ordered by the Board." *Id.*

■ We need not reach GM's argument about incidental and consequential damages since we conclude that credit insurance premiums are "credit charges [or] . . . similar charges." See 9 V.S.A. § 4172(e). These premiums are incurred as an incident to the extension of credit. Our policy on reimbursing these charges should be the same as that on reimbursement of finance charges.[11] In a sense, the consumer has had the benefit of both, and it is not logical to reimburse one while denying reimbursement of the other. Finally, we believe that the appropriate measure of damages is an area where we must defer to the Board.

*Affirmed.*

**Peck, J.,** dissenting. Once again a majority of this Court demonstrates its unfortunate dedication to unrestrained activism as one of the primary factors to be applied in reaching its decisions. Without intending in any way to impugn the honesty, good faith or integrity of any of the parties in this specific case, the extreme activism being adopted as a philosophy by this and other courts frequently serves as an open invitation to judicially sanctioned fraud of the most obvious and egregious sort.

I recognize that there are situations in which the existence of a relevant fact is not subject to objective tests or measurements. Nevertheless, any result in the process of litigation which depends entirely on the purely subjective statement or

---

[11] In some instances, credit insurance premiums are considered part of finance charges. See 15 U.S.C. § 1605(b) (Truth in Lending Act). We have no definition of credit charge, but the term is clearly broader than finance charge.

judgment of a party, and has no objective support to establish the existence of a relevant fact, should be approached with the greatest caution, giving full consideration to the possibility of fraud, and an initial presumption that the Legislature did not intend such a possibility; it should not simply be swept aside with the indifference demonstrated by the majority in this case.

The majority cites and relies on *McClure Bros. v. Briggs*, 58 Vt. 82, 2 A. 583 (1886); it is the essential keystone to the validity of its long opinion. But *McClure* is not in point. As the majority correctly describes that case, "the defendant agreed to purchase an organ from plaintiff if, on trying it, he was satisfied with it." After playing the instrument, defendant declined to complete the purchase because he claimed personal dissatisfaction with its tone. The Court held for the defendant.

Unlike the case before us, there was no mechanical or other ascertainable defect in the organ. Even though an "expert" testified that its tone was good, this Court pointed out that defendant "was the one to be satisfied, and not another for him." *Id.* at 87, 2 A. at 584. In short, *McClure* was one of those few instances in which, absent some actual and determinable defect, the controlling condition in the agreement is entirely subjective and personal to one of the parties; no other test is possible.

Thus, when the opinion claims that in *McClure* this Court interpreted "a *similar* use of the term 'satisfied'" to conform to the majority's subjective interpretation in this case, it sweeps the clear distinction between the two under the rug, or, to mix metaphors, washes it away in a deluge of rhetoric and legalese. A more *dissimilar* use of "satisfied" is hard to imagine. The whole tone and obvious intent of the controlling statutes are undeniably related to mechanical defects and warranties, and the right of the manufacturer to attempt repairs, including the right to "have one final opportunity to correct and repair the *defect*." 9 V.S.A. § 4173(d) (emphasis added).

It is one thing to say that dissatisfaction with a product which is *not* based on ascertainable and possibly correctable defects can be, or well may be, purely subjective. Such instances are typified by modern advertising practices in which a product, such as a book, is offered for a free examination period, with the right to return the product before the end of the specified period at no cost or other obligation, if the prospective purchaser

is not satisfied. Dissatisfaction in such instances may be purely subjective; it need not be based on demonstrable defects.

The potential for outright fraud and bad faith* if satisfaction, following success of the final repair effort, as in fact occurred here, is measurable by the purely subjective standard adopted by the majority, constitutes judicial activism at its most unrestrained and inexcusable. It is not difficult to suggest a hypothetical example of an unintended benefit which might be realized by a purchaser under a fact pattern similar to the case before us: the purchaser's original order, which was duly filled, was for a blue vehicle; during the course of the manufacturer's efforts to correct a defect, the purchaser decides he prefers a red vehicle. By simply saying he is not satisfied with the correction, and not being obligated to state any reason or even show good faith, he can now satisfy his revised preference for a new red car, or a refund with which to purchase one.

I conclude that *McClure* is not apposite; it is not on point because of the distinction outlined above. Although the majority opinion is long and replete with argumentative verbiage, *McClure* remains the underlying basis for the result. But, in fact, it does *not* support the conclusion reached by the Board or its affirmance by the majority. Assuming good faith, subjective satisfaction in *McClure* was the only standard available. It is as far removed from the correction of an ascertainable defect, which was not even a factor in *McClure*, as dark is from light.

There are broad sweeping statements in the majority opinion that are demonstrably questionable at best. To cite one example the majority, admitting some ambiguity in § 4173(d), nevertheless concludes: "the choice of wording is more consistent with a subjective standard than an objective one." This is simply *wrong*; there is no better word to describe it.

If a subjective standard (which does not even require a showing that the expression of dissatisfaction is "real and not feigned, honest and not pretended") was the intent of the Legislature, the language of § 4173(d) which grants the purchaser the

---

* Although it is apparently not questioned in this case, it is noteworthy nevertheless that the Court in *McClure* did in fact require, in subjective cases, that the dissatisfaction must be "real and not feigned, honest and not pretended." *McClure*, 58 Vt. at 87, 2 A. at 584.

right to *recommence* "arbitration," even after he has expressed satisfaction "if the repair proves unsatisfactory," is virtually meaningless. It is inconceivable that many consumers will express satisfaction after the manufacturer's last effort, and risk another painful round of arbitration, when all they need to do is assert dissatisfaction, in order to obtain a brand new vehicle or a refund with which another car may be purchased. Contrary to the majority's ill-considered comment, the language of § 4173(d) is far more consistent with an objective standard, and with a logical assumption that the Legislature did not intend to countenance the opportunities for fraud and dishonesty created by the majority.

The majority comments dealing with speedy resolutions of disputes, and the "great" expense to the purchaser of retaining his own expert, are grossly exaggerated for effect. I cannot accept the likelihood that the fees of a qualified mechanic would be as prohibitive as the majority would have us believe, nor does the opinion cite any support for its contention. Moreover, any such expense should be recoverable if the car owner prevails. And finally, I cannot visualize either that the mere presentation of an expert witness at the hearing before the Board will delay the final resolution of the dispute for any measurable period of time, and the insurance against dishonesty and fraud provided by such witnesses for both parties safeguards the integrity of the procedure.

In my judgment the validity of the majority opinion and result crumbles with the fallacy of *McClure* as the underlying support. The rest deteriorates into an interesting but empty exercise in legal rhetoric which I cannot accept in silence. Accordingly, I dissent; I would reverse and remand.