In re R. Brownson Spencer II, Joseph Vargas III, Harry and Martha Ryan

[566 A.2d 959]

No. 87-158

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed June 2, 1989

Motion for Reargument Denied August 22, 1989

---

*James P. W. Goss* of *Abell, Kenlan, Schweibert & Hall, P.C.,* Rutland, for Appellants.

*Jeffrey L. Amestoy,* Attorney General, and *Conrad W. Smith,* Assistant Attorney General, Montpelier, for Appellee.

**Allen, C.J.** This is an appeal from an order of the Vermont Environmental Board (Board) asserting Act 250 jurisdiction, pursuant to Environmental Board Rule 2(A)(6), over the subdivision of the applicants' properties and the construction of a road for access to those properties. We affirm.

On July 9, 1975, applicants Spencer and Vargas purchased a 110-acre tract of land located in Mendon, Vermont. On February 2, 1982, they conveyed seventeen acres of this tract to applicant Ryan, along with a right of way connecting to a town highway through property owned by Spencer and Vargas. On August 13, 1982, Spencer and Vargas reconveyed the same seventeen acres to Ryan with a revised right of way. Ryan planned to construct a road along the revised right of way to where a proposed driveway would enter his land. The revised right of way also provided access to the remaining lands of Spencer and Vargas.

In October 1982 the District Coordinator issued a project review sheet indicating that an Act 250 permit was not required for construction of the road in light of its intended use as a driveway serving only Ryan's property. From 1983 to 1986, Ryan constructed an access road to town specifications along the revised right of way.

On June 26, 1984, Spencer and Vargas conveyed fifty-eight acres of land to "Spencer and wife" and fifteen acres to "Vargas and wife." Spencer and Vargas retained joint ownership of twenty acres. Subsequently, on August 2, 1985, Spencer, Vargas and Ryan filed an application for an Act 250 permit to use the road under construction by Ryan to access seven lots to be subdivided from Spencer and Vargas' jointly held property and an additional three-acre lot to be subdivided from Ryan's property (the "project"). A public hearing was held by the District #1 Environmental Commission on August 26, 1985, and a permit with conditions was signed on September 16, 1985 and issued on September 19, 1985, twenty-four days after the adjournment of the public hearing. The permit authorized the creation of an eight-lot subdivision served by a 1600-foot road next to Meadowbrook Lake Drive in Mendon, Vermont.

On October 17, 1985, Spencer, Vargas and Ryan filed an appeal from the decision of the District Commission issuing the land use permit in order to contest conditions attached to the permit and the Commission's decision that it had jurisdiction over the project. The Environmental Board affirmed the District Commission's decision and ordered issuance of the land use permit with the same conditions as originally imposed by the Commission with the exception of the date upon which the permit was to expire.[1] In its findings of fact and conclusions of law, dated March 10, 1987, the Board determined that the project at issue was a "development" within the meaning of both 10 V.S.A. § 6001(3) and Environmental Board Rule 2(A)(6) and therefore subject to Act 250 jurisdiction.[2] The Board also found that the property owned by Ryan, Spencer and Vargas, "Spencer and wife," and

---

[1] The Board amended condition #13 to read, "[t]his permit shall expire on October 1, 2030, unless extended by the District Environmental Commission."

[2] In reaching its determination that the project was a "development" under § 6001(3), the Board concluded that "the construction of the road improvements by Ryan, with the subsequent extension of the road by Spencer and Vargas, was not merely to provide access to a single house, but was for the commercial purpose of selling lots." With regard to Board Rule 2(A)(6) the Board further noted that the new road exceeded 800 feet in length and was "incidental to the sale or lease of land on a parcel of land more than ten acres in size."

"Vargas and wife" and served by the new roadway was "involved land" within the meaning of Environmental Board Rule 2(F)(1) and therefore subject to the land use permit. In addition, the Board determined that failure by the District Commission to issue its decision within the twenty-day period prescribed by 10 V.S.A. § 6086(b) did not require automatic issuance of the land use permit without conditions and that the District Commission was not estopped from requiring a permit for the project because of a prior ruling by the District Coordinator that construction of the driveway was not subject to Act 250.

On appeal, the applicants challenge the assertion of Act 250 jurisdiction over the project, arguing that Environmental Board Rule 2(A)(6), otherwise known as the "road rule," is void as exceeding the bounds of the enabling legislation under which it was adopted, 10 V.S.A. § 6025(a), and that the fifty-eight acre tract owned by "Spencer and wife" should not be subjected to the Board's jurisdiction because "Spencer and wife" is a separate entity from the other owning entities. The applicants also argue that an Act 250 permit without conditions should have been granted for their project because of the delay by the District Commission in issuing its decision. Finally, the applicants contend that principles of equitable estoppel relieved them of the necessity to obtain a permit for their project in light of a prior determination by the District Coordinator that construction of the driveway did not require an Act 250 permit.

## I.

■ As this Court has previously noted, although the purposes of Act 250 are broad, its application is not without limitation. See *In re Agency of Administration*, 141 Vt. 68, 76, 444 A.2d 1349, 1352 (1982) (in passing Act 250, Legislature intended to reach only those land use changes "where values of state concern are implicated through large scale changes in land utilization"). Specifically, land use changes subject to the Act 250 permit requirement include, among other things, "construction on a subdivision or development or [the

commencement of] development." 10 V.S.A. § 6081.[3] The term "development," as used in § 6081(a), is defined to mean, in pertinent part, "the construction of improvements on a tract or tracts of land, owned or controlled by a person, involving more than 10 acres of land within a radius of five miles of any point on any involved land, for commercial or industrial purposes."[4] 10 V.S.A. § 6001(3).

Pursuant to 10 V.S.A. § 6025(a), authorizing the adoption of rules to interpret and carry out the provisions of chapter 151, the Board adopted Environmental Board Rule 2(A)(6) further outlining the meaning of the term "development." According to this rule, as last amended on March 11, 1982, "development" for purposes of the permit requirement and Act 250 jurisdiction includes:

> [t]he construction of improvements for a road or roads, incidental to the sale or lease of land, to provide access to or within a tract of land of more than one acre owned or controlled by a person. In municipalities with both permanent zoning and subdivision bylaws, this jurisdiction shall apply only if the tract or tracts of involved land is more than ten acres. For the purpose of determining jurisdiction, any parcel of land which will be provided access by the road is land involved in the construction of the road. This jurisdiction shall not apply unless the road is to provide access to more than five parcels or is to be more than 800 feet in length. For the purpose of determining the length of a road, the length of all other roads within the tract of land constructed within any continuous

---

[3] 10 V.S.A. § 6081(a) reads, in full:

> No person shall sell or offer for sale any interest in any subdivision located in this state, or commence construction on a subdivision or development, or commence development without a permit. This section shall not prohibit the sale, mortgage or transfer of all, or an undivided interest in all, of a subdivision unless the sale, mortgage or transfer is accomplished to circumvent the purposes of this chapter.

[4] The town of Mendon has both permanent zoning and subdivision bylaws. For towns which have not adopted permanent zoning and subdivision bylaws, "development" under § 6001(3) also includes "the construction of improvements for commercial or industrial purposes on more than one acre of land …."

period of ten years commencing after the effective date of this rule shall be included.

Applicants argue that Board Rule 2(A)(6) is an invalid and unconstitutional expansion of the legislative definition of "development" in § 6001(3) and should therefore not have been relied on by the Board in this case. "An agency must operate for the purposes and within the bounds authorized by its enabling legislation, or this Court will intervene." *In re Agency of Administration*, 141 Vt. at 75, 444 A.2d at 1352.

Applicants' argument fails for the simple reason that in 1985 the Legislature, in unambiguous terms, ratified all Board rules relating to the administration of Act 250, including Rule 2(A)(6). According to Public Act No. 52, § 5:

> Rules of the environmental board pertaining to the administration of Act 250 and adopted under subsection 6025(a) or 6086(d) of Title 10 are hereby ratified and shall apply retroactively from the date of adoption.

The definition of "development" contained in Rule 2(A)(6), and ratified by the above public act, now has the same effect as would any law passed by the Legislature in the first instance. It has effectively become part of the Act 250 legislative scheme codified at chapter 151 of Title 10.

■ ■ In interpreting Public Act No. 52, § 5, the Court's primary objective is to give effect to the intent of the Legislature. See *State v. Yudichak*, 147 Vt. 418, 420, 519 A.2d 1150, 1151 (1986). Where the language of the statute is clear, the Legislature's intent must be ascertained from the words of the statute itself. *Vincent v. Vermont State Retirement Bd.*, 148 Vt. 531, 535, 536 A.2d 925, 928 (1987). The Court presumes that the plain, ordinary meaning of the language is intended. *Yudichak*, 147 Vt. at 420, 519 A.2d at 1151.

■ ■ The language of Public Act No. 52, § 5 is clear, and it is the duty of this Court to determine the Legislature's intent in passing § 5 according to the plain meaning of the terms in the statute. The plain meaning of the word "ratify" is "[t]o approve and sanction; to make valid; to confirm; to give sanction to." Black's Law Dictionary 1135 (5th ed. 1979). By the clear language in § 5, the Legislature intended to approve and sanction all rules of the Environmental Board adopted

under 10 V.S.A. §§ 6025(a) and 6086(d) prior to May 15, 1985. This Court must, therefore, enforce the Act according to its terms. *Leno v. Meunier*, 125 Vt. 30, 33, 209 A.2d 485, 488–89 (1965). Rule 2(A)(6), adopted pursuant to § 6025(a), has been approved by the Legislature as a valid exercise of the Board's power to promulgate rules for the administration of Act 250. The Board did not err by finding that, pursuant to Rule 2(A)(6), Act 250 applied and a permit was therefore required for the project.

## II.

Applicants next challenge the Board's finding of jurisdiction over the additional lands owned by "Spencer and wife." The Board concluded that "[b]ecause the road served all these properties at the time of its construction [including the 58 acres now owned by "Spencer and wife"], all of these lands must be included as involved lands which are subject to the land use permit." One of the conditions of the land use permit ordered by the Board was that:

No further subdivision of any parcels of land approved herein shall be permitted without the written approval of the District Environmental Commission.

Applicants argue that "Spencer and wife" should not be treated as the same "person" for purposes of determining whether a "subdivision" exists under 10 V.S.A. § 6001(19), as "Spencer and Vargas," or Spencer alone. Applicants contend that aggregation of lots in this manner is inappropriate even where the aggregated tracts all have one owner in common. Under § 6001(19), a land use change qualifies as a "subdivision" subject to the permit requirement of § 6081(a) when it involves "a tract or tracts of land, owned or controlled by a *person*." (Emphasis added).[5] According to the applicants,

---

[5] The full text of the version of § 6001(19), in effect at the time of the district commission's decision, reads:

"Subdivision" means a tract or tracts of land, owned or controlled by a person, which have been partitioned or divided for the purpose of resale into 10 or more lots within a radius of five miles of any point on any lot, and within any continuous period of 10 years after the effective date of this chapter. In determining the number of lots, a lot shall be counted if any portion is within five miles.

Spencer and his wife should not be required to obtain a permit prior to subdividing the additional land they own jointly until subdivision of the tenth lot out of that land occurs. As it stands now the property owned by "Spencer and wife" is subject to the land use permit and may not be subdivided without the written approval of the District Environmental Commission. Had their project not been subject to this permit, Spencer and his wife would have been able to subdivide their jointly held property into up to nine lots without becoming subject to the permit requirement of 10 V.S.A. § 6081(a).

Applicants assert that the land held jointly by the couple is "owned or controlled" by the marital entirety, and not by either Spencer or his wife individually.[6] As such, "Spencer and wife" should be considered a distinct "person" under § 6001(19).

In support of their argument, the applicants rely on 10 V.S.A. § 6001(14)(A), as amended effective July 1, 1987, which defines the term "person," for Act 250 purposes, to include "an individual's ... spouse, unless the individual establishes that he or she will derive no profit or consideration, or acquire any other beneficial interest from the partition or division of land by the ... spouse." Applicants assert that the 1987 amendment of § 6001(14) was an attempt by the Legislature to expand the definition of "person" to encompass an individual's spouse when determining the individual's land holdings for purposes of Act 250. According to the applicants, land owned by a "husband" or "wife" and "husband and wife," prior to the amendment in 1987, would be treated as owned by separate "persons" when applying § 6001(19).[7] Applicants argue that because their application for a permit was filed before the statutory amendment, the previous definition of "person" is

---

[6] Applicants point out in their brief that, "[u]nlike the subdivided lands which he owned individually or the lands formerly held in common with Vargas, Spencer has no authority to convey his interest in the Additional Lands or otherwise 'control' those lands in any way without obtaining the agreement and signature of his wife on any deed or conveyance of interest in the land."

[7] The version of § 6001(14) in effect at the time of the District Commission's decision did not expressly define "person" to include an individual's spouse:

"Person" shall mean an individual, partnership, corporation, association, unincorporated organization, trust or any other legal or commercial entity, including a joint venture or affiliated ownership. The word "person" also means a municipality or state agency.

controlling in this case and the lands owned by Spencer, individually, and by "Spencer and wife" are, therefore, not owned by the same "person" within the meaning of that definition.

■ This Court has recently noted that "tenants by the entirety are viewed as being individually vested, under a legal fiction, with title to the whole estate." *Bellows Falls Trust Co. v. Gibbs*, 148 Vt. 633, 633, 534 A.2d 210, 211 (1987) (mem.) (citing *Preston v. Chabot*, 138 Vt. 170, 174, 412 A.2d 930, 932 (1980)). Although tenants by the entirety may not dispose of nor encumber a share of the subject property without the joinder of the other spouse, *id.* at 633, 534 A.2d at 211, absolute ownership and control by an individual is not required for Act 250 jurisdiction. Spencer's interest in the property held jointly with his wife is an ownership interest sufficient enough in magnitude to allow aggregation of that interest with his other property interests and those held jointly with Vargas, for Act 250 purposes. Stated another way, "Spencer and wife" do not comprise a separate "person," within the meaning of § 6001(3), from "Spencer and Vargas" or Spencer, himself.

Moreover, the amendment of § 6001(14) cited to by applicants in support of their argument does not require a different result. The legislative findings accompanying the 1987 amendment make clear that the amendment was merely intended to broaden the definition of a "person" owning or controlling land to include those who may not be mentioned specifically in the conveyance, but who may nevertheless derive some benefit from partition or division of the land. The legislative findings state in pertinent part:

> [I]n order to ensure appropriate Act 250 review, it is necessary to treat persons with an affiliation for profit, consideration, or some other beneficial interest derived from the partition or division of land as a single person for the purpose of determining whether a particular conveyance is subject to Act 250 jurisdiction.

Public Acts, 1987, No. 64, § 1. While the amendment makes it clear that an individual's spouse will almost always be

included as a "person" for the purposes of Act 250,[8] it does not decide the question of whether that person demonstrates the requisite "ownership or control."

### III.

Applicants further argue that an Act 250 permit should issue without conditions pursuant to 10 V.S.A. § 6086(b) because the District Environmental Commission issued its opinion twenty-four days after the adjournment of the public hearing. They analogize 10 V.S.A. § 6086(b),[9] requiring issuance of the District Commission's findings and decision within twenty days of the final hearing date, to 10 V.S.A. § 6085(d), requiring automatic issuance of a permit when no hearing has been held and a permit has not been granted or denied within sixty days of receipt of the application. Applicants, in effect, ask this Court to read into the language of § 6086(b) a remedy of automatic issuance of a permit without conditions for the failure of the District Commission to issue its opinion within the statutorily prescribed twenty-day period.

The express language of § 6086(b), however, does not provide for such a remedy. Moreover, the fact that § 6085(d) allows for automatic issuance of a permit under certain circumstances illustrates that the Legislature knew how to provide for a remedy if it chose to. The absence of a similar express provision in § 6086(b), therefore, demonstrates a legislative intent not to provide for such a remedy.

■ This Court has previously had occasion to consider the underlying purpose and application of a statutorily imposed time limit for the issuance of a decision by an administrative agency within the area of land use and development. See *City of Rutland v. McDonald's Corp.*, 146 Vt. 324, 326–31, 503 A.2d

---

[8] The amendment provides an escape clause allowing a spouse to avoid Act 250 jurisdiction where it can be established "that he or she will derive no profit or consideration, [nor] acquire any other beneficial interest from the partition or division of land ...." See 10 V.S.A. § 6001(14)(A)(iv).

[9] 10 V.S.A. § 6086(b) reads, in pertinent part:

When the complete application has been submitted, the district commission or the board shall issue its findings and decision thereon within 20 days of the final hearing day.

1138, 1140–42 (1985) (construing 24 V.S.A. § 4470(a)). The applicant in *McDonald's* argued that because of inadequacies in the decision of the Rutland Zoning Board of Adjustment denying the applicant's 110-foot variance, "the law 'deemed' the variance to have been granted," pursuant to 24 V.S.A. § 4470(a). *Id.* at 326, 503 A.2d at 1140. In rejecting the applicant's argument, this Court considered the underlying purpose of the time limit for issuance of decisions under § 4470(a):

> The purpose of the 45-day rule is to encourage prompt consideration of the application within a time certain. This interest in prompt action must be balanced against the state's "paramount obligation to promote and protect the health, safety, morals, comfort and general welfare of the people."

*Id.* at 330, 503 A.2d at 1142 (citations omitted). These same considerations must guide the Court when reviewing the application of the time limit for issuance contained in § 6086(b) in the case at hand. In light of those considerations, it is clear that the Board did not err by concluding that automatic approval of the permit without conditions, simply because issuance of the decision occurred a few days late, was not justified when the possible harm to the applicant for such a delay is balanced against the overall protection of the public's health, safety and welfare. We do not intend to undermine or detract from our earlier observation in *In re Wildlife Wonderland, Inc.*, 133 Vt. 507, 516, 346 A.2d 645, 651 (1975), that we will not condone the Board's failure to follow the dictates of the statute and that undue and unwarranted delay might well constitute grounds for reversal. There, as here, the applicant failed to demonstrate any injury resulting from the delay. The delay involved here was de minimis and, when balanced against the potential impact of the project on the environment and surrounding community, does not justify the result sought by the applicants.

## IV.

■ Finally, applicants argue that principles of equitable estoppel relieve them from any requirement to obtain a permit for their project after an initial determination by the District

Coordinator that no Act 250 permit was required for construction of the road to Ryan's property.[10] For equitable estoppel to provide relief, the following conditions must be satisfied:

(1) [t]he party to be estopped must know the facts;
(2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;
(3) the latter must be ignorant of the true facts; *and*
(4) he must rely on the former's conduct to his injury.

*In re McDonald's Corp.*, 146 Vt. 380, 383–84, 505 A.2d 1202, 1204 (1985) (citations omitted) (emphasis in original). This Court is reluctant to apply estoppel against the state unless there are "extraordinary circumstances" or the "'injustice which would result from a failure to uphold an estoppel is of sufficient dimensions to justify any effect upon public interest or policy which would result from the raising of an estoppel.'" *Id.* at 383, 505 A.2d at 1203–04 (quoting *Chaplis v. County of Monterey*, 97 Cal. App. 3d 249, 258, 158 Cal. Rptr. 395, 400 (1979) (quoting *City of Long Beach v. Mansell*, 3 Cal. 3d 462, 496–97, 476 P.2d 423, 448, 91 Cal. Rptr. 23, 48 (1970))).

█ In the case at hand, it cannot be said that the applicants relied on the ruling of the District Coordinator to their detriment. The project review sheet upon which the claim of estoppel is based clearly stated that no subdivision plans were being contemplated by the applicants at the time of the District Coordinator's decision. By the language contained in the project review sheet, the applicants should have known that further use of the road to access later-subdivided lots would again raise the question of Act 250 coverage. The applicants have failed to establish all of the constituent elements of equitable estoppel.

*Affirmed.*

---

[10] In a project review sheet, the District Coordinator noted, "[c]onstruction is of a driveway, not road. No subdivision plans at this time." Based on these conclusions, no Act 250 permit was required.