STATE OF VERMONT

ENVIRONMENTAL COURT

}
In re Baldwin Property }
  Act 250 Jurisdictional Opinion # 4-220 }     Docket No. 255-12-09 Vtec
    (Appeal of Baldwin) }
}

## Decision and Order

Appellants Peter Baldwin, Mary Baldwin, Matthew Baldwin, and Daniel Baldwin appeal from an Act 250 jurisdictional opinion and a revised Act 250 jurisdictional opinion issued by the District #4 Environmental Coordinator (District Coordinator) regarding property owned by Appellants in Hinesburg, Vermont. On appeal, Appellants ask the Court to determine, for the purposes of Act 250 jurisdiction, the "lot count" attributable to Peter and Mary Baldwin (the parents) as well as the "lot count" attributable to Matthew and Daniel Baldwin (the sons). Appellants are represented by Eric Knudsen, Esq. No other party has entered an appearance in this matter. The Vermont Natural Resources Board has not entered an appearance in this matter, but has informational status to receive a copy of this decision. Appellants have now moved for a decision on the merits of the appeal by summary judgment.

## Standard Applicable to Appellants' Motion

As no other parties have entered an appearance in this de novo appeal, Appellants have submitted the merits of this matter to the Court through a motion for summary judgment, based on uncontested facts. However, "despite the lack of any opposing parties, the appeal 'is not before the Court in the nature of a default judgment.'" In re: Kevin L. Rogers, Inc., No. 88-5-09 Vtec, slip op. at 1 (Vt. Envtl. Ct. Nov. 4, 2009) (Wright, J.) (quoting In re: Free Heel, Inc., d/b/a Base Camp Outfitters,

1

No. 217-9-06 Vtec, slip op. at 1, n.1 (Vt. Envtl. Ct. Mar. 21, 2007) (Wright, J.)). Rather, the Court must "independently examine the material facts, and may only grant the motion if Appellants are entitled to judgment under the applicable substantive law, as the Court is obligated to apply the substantive standards that were applicable before the tribunal appealed from." Id. See also In re: Outdoors in Motion, Inc., Act 250 Amendment, No. 208-9-06 Vtec, slip op. at 1 (Vt. Envtl. Ct. Dec. 26, 2006) (Durkin, J.) ("[T]he Court must review the material facts and may only grant Appellants' motion if [it is] determine[d] that the applicable law directs that Appellants are entitled to judgment (citing In re Appeal of Jolley Assocs., 2006 VT 132, ¶ 9, 181 Vt. 190)). In order to grant Appellants' motion, "the Court must satisfy itself that the materials supporting the motion are 'both formally and substantively sufficient to show absence of a fact question' and that the moving party is entitled to judgment as a matter of law." In re: Scarborough Conditional Use Application, No. 206-9-07 Vtec, slip op. at 6 (Vt. Envtl. Ct. Mar. 13, 2008) (Wright, J.) (quoting Miller v. Merchant's Bank, 138 Vt. 235, 238 (1980)). The facts referred to in this opinion—which are derived from Appellants' uncontested statement of facts, affidavits, and documents—are undisputed unless otherwise noted. See generally Appellants' Statement of Undisputed Material Facts (Feb. 18, 2010) [hereinafter Statement of Facts].

## Statutory and Regulatory Framework

In a de novo appeal such as this, the Court "appl[ies] the substantive standards that were applicable before the tribunal appealed from." 10 V.S.A. § 8504(h); see also, e.g., In re Godnick Family Trust Permit & Variance Application, No. 52-4-09 Vtec, slip op. at 5 (Vt. Envtl. Ct. Jan. 6, 2010) (Durkin, J.) (discussing 10 V.S.A. § 8504(h)). Therefore, in order to resolve this de novo appeal it is important to first understand the statutory and regulatory framework governing the District Coordinator, and hence this Court, in issuing the Act 250 jurisdictional opinion requested in this case. This

2

framework includes the Act 250 statute, 10 V.S.A. ch. 151, and the Act 250 Rules adopted by the Vermont Environmental Board "to interpret and carry out the provisions of [Act 250]." In re Spencer, 152 Vt. 330, 224 (1989) (citing 10 V.S.A. § 6025(a)).[1]

Under Act 250, "[n]o person shall sell or offer for sale any interest in any subdivision ... or commence construction on a subdivision or development," unless such a person has obtained an Act 250 permit. 10 V.S.A. § 6081(a). The term "subdivision" is defined as

> a tract or tracts of land, owned or controlled by a person, which the person has partitioned or divided for the purpose of resale into 10 or more lots within a radius of five miles of any point on any lot, or within the jurisdictional area of the same district commission, within any continuous period of five years.

Id. § 6001(19).[2] Therefore, a proposed subdivision only requires an Act 250 permit if it proposes to create ten or more individual lots, or "if the 'person' who owns or controls the land to be subdivided has subdivided other lots within the required area such that the total number of lots created or proposed to be created by that person is 10 or more within a continuous period of five years." In re Shenandoah, LLC, No. 245-10-08 Vtec, slip op. at 5 (Vt. Envtl. Ct. Sept. 11, 2009) (Durkin, J.).

In order to establish whether a proposed division of land meets the ten-lot threshold within the five-year period, thereby constituting a "subdivision" and triggering Act 250 jurisdiction, it is necessary to ascertain the "lot count" of the "person" proposing the subdivision. The methodology for determining a person's lot count is governed by Act 250 Rule 2(B)(1), which states:

---

[1] The Act 250 Rules, which were last amended in July of 2009, are available at: http://www.nrb.state.vt.us/lup/publications/rules/2009rules.pdf.

[2] As the Town of Hinesburg has adopted permanent zoning and subdivision bylaws, the alternate statutory definition of "subdivision," triggered by the division of six or more lots, is not applicable. 10 V.S.A. § 6001(19).

In order to determine the number of lots created by a person, a lot shall be deemed to have been created for the purpose of resale with the first of the following events:

(a) the filing of a plot plan in the town land records depicting the subdivided lot or lots;

(b) the issuance of any required municipal approval for the subdivided lot or lots that becomes final;

(c) the issuance of a waste water system and potable water supply permit for the subdivided lot or lots by the Agency of Natural Resources or delegated municipality;

(d) in the absence of any of the above, the conveyance of a lot or lots created by a person.

In determining whether a "person" has met the ten-lot threshold to constitute a "subdivision" under Act 250, the statute includes certain related or affiliated individuals or entities within the term "person." The statute states that the term "person"

(i) shall mean an individual, partnership, corporation, association, unincorporated organization, trust or other legal or commercial entity, including a joint venture or affiliated ownership;

(ii) means a municipality or state agency;

(iii) includes any individuals and entities affiliated with each other for profit, consideration, or any other beneficial interest derived from the partition or division of land; [and]

(iv) includes an individual's parents and children, natural and adoptive, and spouse, unless the individual establishes that he or she will derive no profit or consideration, or acquire any other beneficial interest from the partition or division of land by the parent, child, or spouse[.]

10 V.S.A. § 6001(14)(A). Thus, under subsections (iii) and (iv) of the definition of "person," the Legislature has directed that in certain circumstances the lot count of an individual subdivider may be augmented by lots created by other people or entities

4

with which that individual is affiliated, even if that individual was not involved in the creation of such lots.

Once the lot count of a "person" reaches ten lots within the defined geographical area during any continuous period of five years, Act 250 jurisdiction is triggered and a permit is required in order to subdivide or develop the land involved. Proposals that do not meet the ten-lot threshold within the five-year period—for example, a nine-lot subdivision or a proposed subdivision that does not increase a person's lot count to ten or more—are not subject to Act 250 jurisdiction and do not require a permit.

In order to determine whether an Act 250 permit is needed, individuals who plan to divide or develop their land "may request a jurisdictional opinion from the district coordinator concerning the applicability of [Act 250]." 10 V.S.A § 6007(c); see also Act 250 Rule 3(a) (stating that "[a]ny person seeking a ruling as to whether an activity constitutes a development or a subdivision subject [to] the jurisdiction of [Act 250] may request a jurisdictional opinion from a district coordinator"). Jurisdictional opinions are also subject to a request for reconsideration within thirty days, and may further be appealed to this Court. See 10 V.S.A § 6007(c) ("A jurisdictional opinion . . . shall be subject to a request for reconsideration in accordance with rules of the board and may be appealed to the environmental court pursuant to chapter 220 of this title."); Act 250 Rule 3(B) (permitting a party to seek reconsideration of a jurisdictional opinion within thirty days of the mailing of the initial opinion).

Factual and Procedural Background

This case involves several parcels of property located in Hinesburg, Vermont, owned by members of the Baldwin family. A diagram of the property addressed in this decision is attached, in order to enable the reader to better understand the property references. Prior to the events discussed in this decision, some of the property was owned in common by Appellant Peter Baldwin and his sister, Andrea Baldwin

5

Haulenbeek. A separate 10.5-acre lot was owned by Appellant Peter Baldwin together with his wife, Appellant Mary Baldwin.[3] That 10.5-acre parcel, located on the north side of Drinkwater Road, is shown as combined Lots 1-A, 1-B, and 1-C on the attached diagram.

In May of 2008, Peter and Mary Baldwin received final plat approval from the Hinesburg Development Review Board (DRB) to subdivide their 10.5-acre parcel into three lots: a 3.3-acre lot containing the parents' existing residence (Lot 1-A), a 3.5-acre lot (Lot 1-B), and a 3.7-acre lot (Lot 1-C). At present, the parents still own and reside in the residence on Lot 1-A, and they have not conveyed, developed, or further subdivided Lots 1-B or 1-C.

Prior to 2008 Peter Baldwin also co-owned, with his sister, four adjoining parcels of property, shown as Lot 2, Lot 3, combined Lot 4/6, and combined Lot 5/7 on the attached diagram. The four parcels of property jointly owned by Peter Baldwin and his sister were principally used for haying in connection with the Baldwin family farming operation. However, by 2008 Peter Baldwin and his sister "were unable to agree on the use of the property for the farming operations." Statement of Facts, ¶ 5. Therefore, the sister initiated a partition action in Chittenden Superior Court. During the course of the partition action, Peter Baldwin and his sister "ultimately agreed" to divide the land that they jointly owned. Id.

In order to accomplish the division of their property, Peter Baldwin and his sister, as co-applicants, applied for final plat approval from the DRB to subdivide the two northerly lots. On August 5, 2008, the DRB approved their subdivision of the two northerly lots (the "partition subdivision"), creating four new individual lots (Lots 4, 5, 6, and 7). As of that date, Peter Baldwin and his sister co-owned six lots, shown as Lot

---

[3] Appellants Matthew and Daniel Baldwin are the adult sons of Peter and Mary Baldwin. From time to time this decision will refer to Peter and Mary Baldwin as "the parents" and to Matthew and Daniel Baldwin as "the sons."

6

2, Lot 3, Lot 4, Lot 5, Lot 6, and Lot 7 on the attached diagram. By quit-claim deed, Peter Baldwin and his sister then conveyed Lots 2, 3, 4, and 5 solely to Peter; and conveyed Lots 6 and 7 solely to his sister.

After the subdivision approval and the resulting conveyances, Peter and Mary Baldwin continued to operate the family farming operation on Lots 2, 3, 4, and 5. Their sons Matthew and Daniel Baldwin have also been "fully engaged in conducting the family farming operations on the partitioned property" since that time. Statement of Facts, ¶ 10. Although the sons play an integral role in the family farming operation, they are both adults who are not "claimed as dependents by their parents." Id.

In February of 2009, Peter Baldwin filed three applications with the DRB seeking minor subdivision sketch plan approval of Lots 3, 4, and 5.[4] Specifically, those applications sought sketch plan approval for a three-lot subdivision of Lot 3, a three-lot subdivision of Lot 4, and a two-lot subdivision of Lot 5. The DRB granted sketch plan approval for all three proposals on April 21, 2009.[5]

On August 10, 2009, Peter Baldwin conveyed Lots 3, 4, and 5 by deed to his sons; the conveyance was a "gift" and was accomplished "without any payment or expectation of payment from [the sons]." Id. ¶ 12. The impetus behind the conveyance of Lots 3, 4, and 5 to the sons was that Peter Baldwin was scheduled to "undergo potentially life-threatening surgery" on August 11, 2009. Id. However, Peter Baldwin

---

[4] Under the Town of Hinesburg Subdivision Regulations (Subdivision Regulations), minor subdivisions of three lots or less must undergo a two-step approval process: the first step being sketch plan review and the second being final plat approval. Subdivision Regulations, art. 3. On the other hand, major subdivisions of more than three lots must undergo a three-step approval process: the first being sketch plan review, the second being preliminary plat review, and the third being final plat review. Id. Each of the three subdivision applications submitted by Peter Baldwin was for three (or fewer) lots and each was treated as a minor subdivision.

[5] Two of the three applications were later withdrawn due to concerns regarding whether they would trigger Act 250 jurisdiction on property owned by Appellants; this issue is discussed further below.

7

states that "it was always [the parents'] intention to convey ownership of this property to [the sons] as a gift." Mary & Peter Baldwin Aff. ¶ 10 (Feb. 18, 2010). The parents retained title to Lots 1-A, 1-B, and 1-C, as well as to Lot 2.

On August 26, 2009, pursuant to Act 250 Rule 2(A), the Baldwin family requested a jurisdictional opinion from the District #4 Environmental Coordinator regarding their land. The District Coordinator issued Jurisdictional Opinion #4-220 (Jurisdictional Opinion) on September 8, 2009. In the opinion, the District Coordinator first determined that the parents had created more than ten lots on their land during the preceding five years, which constituted a "subdivision" under Act 250, and therefore Act 250 jurisdiction had been triggered on that land prior to the transfer of property to the sons. Jurisdictional Opinion, at 4.[6] The District Coordinator also determined that the parents and the sons were considered to be one "person" for Act 250 purposes and that therefore the lots created by the parents were also attributable to the sons. This determination meant that Act 250 jurisdiction continued to exist over the land conveyed to the sons. Id. Put differently, the Jurisdictional Opinion concluded that Act 250 jurisdiction had been triggered for the land owned by the parents and the land now owned by the sons, and that, therefore, any further subdivision or development of that

---

[6] More specifically, the District Coordinator concluded that Peter and Mary Baldwin had created fifteen lots in the five years preceding the Jurisdictional Opinion: three lots through the subdivision of their residential property (Lots 1-A, 1-B, and 1-C) in May of 2008; four lots through the partition of the land co-owned by Peter Baldwin and his sister (Lots 4, 5, 6, and 7) in August of 2008; and eight future lots through the three subdivision applications (further subdividing Lots 3, 4, and 5) that received sketch plan approval on April 21, 2009. Jurisdictional Opinion, at 4. The District Coordinator did note the possibility that the three subdivision applications might only be counted as six new lots—if "two of [the eight proposed] lots have already been counted in the partition subdivision"—although that calculation would still increase the parents' lot count to thirteen and would nevertheless trigger Act 250 jurisdiction on their property. Id.

8

land would require an Act 250 permit, including the then-proposed subdivisions of Lots 3, 4, and 5 that had received sketch plan approval from the DRB.

After the issuance of the Jurisdictional Opinion, on September 21, 2009, Peter, Matthew, and Daniel Baldwin sent written notice to the Town that they were withdrawing the subdivision applications for the three-lot subdivision of Lot 3 and the two-lot subdivision of Lot 5; the application for the three-lot subdivision of Lot 4 was not withdrawn. At present, the proposed three-lot subdivision of Lot 4 has received no approvals other than the sketch plan approval granted in April of 2009; however, it appears that the sons intend to further pursue the application for the three-lot subdivision of Lot 4 in the future. See Appellants' Motion for Summary Judgment, at 12 (Feb. 18, 2010) (referring to the "potential lots to be created on the partitioned property by Matthew and Daniel").

Because of the withdrawal of two of the subdivision applications, which the District Coordinator had included in his previous determinations regarding the property, the Baldwin family requested a reconsideration of the September 8, 2009 Jurisdictional Opinion. The District Coordinator issued Jurisdictional Opinion #4-220-Reconsideration (Reconsideration Opinion) on December 2, 2009. In the Reconsideration Opinion, the District Coordinator first determined that Act 250 jurisdiction had not been triggered on the parents' land prior to the conveyance to the sons because as of that time the parents had only created seven lots (Lots 1-A, 1-B, 1-C, 4, 5, 6, and 7); this reduction in number was due to the withdrawal of the two subdivision applications. Reconsideration Opinion, at 1. In addition, the District Coordinator again determined that the parents and the sons were considered to be one "person" for Act 250 purposes and therefore the seven lots created by the parents were also attributable to the sons. Id. However, because fewer than ten lots had been created, the District Coordinator determined that Act 250 jurisdiction had not been triggered on the land conveyed to the sons. Id.

9

Appellants filed a timely appeal of the Jurisdictional Opinion and Reconsideration Opinion with this Court.

## Issues Presented by the Statement of Questions

Through their appeal, Appellants now seek a jurisdictional opinion from this Court regarding the lot count attributable to the parents and the lot count attributable to the sons, and whether those lot counts trigger Act 250 jurisdiction on their respective properties. More specifically, Appellants present their appeal through six questions posed in their Statement of Questions, which ask the Court to determine: (1) whether the partition of the land that was co-owned by Peter Baldwin and his sister should be counted as subdivided land under 10 V.S.A. § 6001(19); (2) if the partition is considered to be subdivided land for Act 250 purposes, how many lots should be attributed to the parents; (3) whether any lots created by the parents in the last five years are attributable to the sons for Act 250 purposes; (4) whether the parents and the sons are to be considered as one "person" for Act 250 purposes; (5) whether any future lots created by the sons on the land granted to them in August of 2009 will be attributable to the parents; and (6) what the parents' present lot count is for Act 250 purposes.

## Parents' Lot Count for Act 250 Purposes—Questions 1, 2, & 6 of the Statement of Questions

In regard to the parents' lot count, Appellants ask the Court to hold that the four-lot partition subdivision of the land formerly owned by Peter Baldwin and his sister is not included in the parents' lot count; that the parents' present lot count is three lots; and that Act 250 jurisdiction has not been triggered on their property.

In this case, the parents' "lot count" started with the division of their former 10.5-acre residential lot into three smaller lots (Lots 1-A, 1-B, and 1-C) in May of 2008, which brought their lot count to three subdivided lots; Appellants themselves acknowledge

10

this fact. See Appellants' Motion for Summary Judgment, at 7 ("Since that [3-lot] subdivision occurred less than five years ago, those three lots remain part of [the parents'] 'lot count.'").

The next division of land affecting the parents' lot count is the partition of two of the lots that were co-owned by Peter Baldwin and his sister, which resulted in the creation of four new lots (Lots 4, 5, 6, and 7). For the following reasons, the Court concludes that all four of the lots created by that partition are included in the parents' lot count.[7]

Although the sister unilaterally initiated the partition action in superior court, this decision need not address the effect of a court-ordered partition under Act 250 because both Peter Baldwin and his sister jointly agreed to subdivide the two co-owned lots and jointly undertook the process of applying for and receiving final plat approval from the DRB to create the four new lots. Therefore, it was the final plat approval of the partition subdivision, rather than a court-ordered partition, that resulted in the creation of lots. Act 250 Rule 2(B)(1)(b). As "affiliated owners[]" of the parcels being divided, they qualified as one "person" under Act 250 and division of those co-owned parcels is necessarily included in the respective lot counts of both of them. 10 V.S.A. § 6001(14)(A)(i).

Act 250 Rule 2(B)(1)(b) dictates that a lot is "deemed to have been created for the purpose of resale," and therefore must be added to the "lot count" of a "person" creating such a lot, upon "the issuance of any required municipal approval for the

---

[7] Lots created by Peter Baldwin through the partition are also attributed to Mary Baldwin, his wife, under 10 V.S.A. § 6001(14)(A)(iv), which mandates that a husband and wife are counted as one "person" for Act 250 purposes unless it is established "that he or she will derive no profit or consideration, or acquire any other beneficial interest from the partition or division of land by the . . . spouse." Appellants do not assert that Mary Baldwin falls within the exception in § 6001(14)(A)(iv); therefore, lots created by Peter Baldwin, such as the lots created through the four-lot partition subdivision, are also attributed to his wife.

11

subdivided lot or lots that becomes final." Under this rule, the four new lots created by the partition subdivision were "deemed to have been created for the purpose of resale" on August 5, 2008, when Peter Baldwin and his sister received final plat approval from the DRB to subdivide two of the lots they jointly owned.[8] Because they jointly "created" those four new lots, under Act 250 those four new lots are necessarily included in both of their lot counts. Therefore, upon receiving final plat approval for the partition, Peter Baldwin created four new lots that were added to his lot count, which increased the parents' lot count to seven.

Also relevant in determining the parents' lot count are the three subdivision applications filed by Peter Baldwin in February 2009 that proposed to divide Lots 3, 4, and 5. Although those three applications did receive sketch plan approval from the DRB on April 21, 2009, merely receiving a grant of sketch plan approval does not amount to creation of a lot for purposes of resale under Act 250. As discussed above, a lot is only deemed to have been created, and thereby counted in a person's lot count,

---

[8] Appellants argue that the partition "subdivision was not done in furtherance of or in contemplation any development," but rather "out of necessity to separate the common ownership." Appellants' Motion for Summary Judgment, at 7. This argument appears to contest whether the creation of the four lots was done "for the purpose of resale," which is an element of the definition of "subdivision." 10 V.S.A. § 6001(19). However, under Act 250 Rule 2(B)(1)(b) the partition is nevertheless "deemed to have been created for the purpose of resale" because Peter Baldwin and his sister applied for and received final plat approval for the partition subdivision from the DRB, regardless of their state of mind. Appellants have not addressed whether or under what circumstances an applicant can present evidence to rebut the "deemed-for-resale" effect of Act 250 Rule 2(B)(1). In any event, such evidence of state of mind would ordinarily require an evidentiary hearing. See In re Zurn Sisters Dev., LLC, No. 233-9-06 Vtec, slip op at 1, n.1 (Vt. Envtl. Ct. Nov. 9, 2007) (Wright, J.) (Trial courts "should be cautious in granting motions for summary judgment in any cases in which the resolution of the dispositive issue requires determination of state of mind, as the fact finder normally should be given the opportunity to make a determination of the credibility of witnesses, and the demeanor of the witness whose state of mind is at issue." (quoting Barbagallo v. Gregory, 150 Vt. 653, 653 (1988) (mem.))).

12

when (a) the person files a subdivision plot plan in the town records, (b) the proposed subdivision receives municipal approval for the subdivision that becomes final, (c) the proposed subdivision receives wastewater and water supply permits from the Agency of Natural Resources, or (d) the person actually conveys the subdivided lots. Act 250 Rule 2(B)(1). In this case, none of those four scenarios occurred with regard to the three subdivision applications filed by Peter Baldwin. Sketch plan approval is only the first of two steps in receiving final plat approval from the DRB for a minor subdivision, and only the first of three steps for a major subdivision. See Town of Hinesburg Subdivision Regulations § 3.1 (2009) (governing sketch plan approval); id. §§ 3.2, 3.3 (governing final plat approval for minor and major subdivisions). Therefore, the three subdivision proposals did not amount to the creation of lots for purposes of Peter Baldwin's lot count.

In any event, Peter Baldwin and the sons formally withdrew the subdivision applications for the three-lot subdivision of Lot 3 and the two-lot subdivision of Lot 5, leaving only the application for the three-lot subdivision of Lot 4. See Act 250 Rule 2(B)(2) ("A subdivision shall cease to exist if it is found . . . to have been retracted or revised below jurisdictional levels at any time prior to the construction of improvements on the subdivision."). The remaining three-lot subdivision of Lot 4 has not been pursued to the point of creating any lots for Act 250 purposes; it therefore does not increase the lot count of any person unless and until one of the four conditions in Act 250 Rule 2(B)(1) has occurred.

In sum, the parents' lot count currently stands at seven lots: three lots from the creation of Lots 1-A, 1-B, and 1-C in May of 2008 and four lots from the creation of Lots 4, 5, 6, and 7 in August of 2008. This conclusion, and the foregoing analysis, resolves Questions 1, 2, and 6 of the Statement of Questions.

13

<u>Effect of Future Subdivision of Land Owned by the Sons—Question 5 of the Statement of Questions</u>

Question 5 of the Statement of Questions asks whether any future lots created by the sons on Lots 3, 4, and 5, which they now own, will "be considered part of their father's 'lot count' under Act 250." It appears from Appellants' filings in connection with their motion for summary judgment that the sons intend to further pursue the three-lot subdivision of Lot 4, which was initially applied for by Peter Baldwin. See Appellants' Motion for Summary Judgment, at 12 (referring to the "potential lots to be created on the partitioned property by Matthew and Daniel"). Therefore, Appellants' Question 5 implicitly asks the Court to determine whether the new lots created by the sons' three-lot subdivision of Lot 4, if and when finalized, will be counted in the parents' "lot count" for Act 250 purposes.

As discussed above, this issue turns on whether the parents and sons are considered as the same "person" for the purposes of Act 250 jurisdiction under 10 V.S.A. § 6001(14)(A). If they are considered one "person" for the purpose of the three-lot subdivision of Lot 4, then the new lots created by that subdivision would be added to the lot count of the sons as well as to the lot count of the parents.

However, the Court does not reach this issue in the present case as Question 5 of the Statement of Questions is beyond the scope of this appeal. This appeal is a <u>de novo</u> proceeding regarding the request that was considered below, 10 V.S.A. § 8504(h), which in this case is Appellants' request for a jurisdictional opinion, and their request for reconsideration of that opinion, that were submitted to the District Coordinator. The substantive scope of this appeal is limited to what was before the District Coordinator; the Court does not have authority to hear issues that were not before the District Coordinator or issues that are broader than those that were before the District Coordinator. See, e.g., <u>Appeal of Yates</u>, No. 158-9-04 Vtec, slip op. at 6 (Vt. Envtl. Ct. Apr. 17, 2007) (Durkin, J.) (stating that "[t]he substantive scope of this appeal is no

14

broader than the scope of the application before the [panel below]" (citing In re Torres, 154 Vt. 233, 235 (1990))); In re: Kibbe Zoning Permit, No. 173-8-07 Vtec, slip op. at 7 (Vt. Envtl. Ct. Feb. 13, 2008) (Wright, J.) (stating that the Court does not have authority to consider those issues that were not before the panel appealed from and therefore such questions must be dismissed).

As summarized in the September 8, 2009 Jurisdictional Opinion, Appellants sought a jurisdictional determination under Act 250 "regarding whether the 'partition' of the property co-owned by Peter Baldwin and his sister . . . constituted a 'subdivision' under 10 V.S.A. § 6001(19), and if so, how many lots were created and whether lots created by Peter and/or Mary Baldwin are counted against future lots created by [the sons]." Jurisdictional Opinion, at 1. The only additional issue before the District Coordinator in the December 2, 2009 Reconsideration Opinion was the effect that the withdrawn subdivision applications had on the Coordinator's opinion. Reconsideration Opinion, at 1. Nothing in Appellants' initial request or their request for reconsideration sought a determination regarding whether future lots created by the sons would be attributed to the parents. Therefore, as this issue was not before the District Coordinator it is beyond the scope of the appeal before this Court. Accordingly, Question 5 of the Statement of Questions must be dismissed as beyond the scope of this appeal.

### Sons' Lot Count for Act 250 Purposes—Questions 3 & 4 of the Statement of Questions

Questions 3 and 4 of the Statement of Questions ask this Court to determine whether the parents and sons should be considered one "person" under Act 250 for any of the seven lots created by the parents, and also to determine the current overall "lot count" for the sons. Appellants ask the Court to conclude that the present lot count is zero for each of the sons.

15

As discussed above, the term "person" under Act 250 "includes an individual's parents and children ... unless the individual establishes that he or she will derive no profit or consideration, or acquire any other beneficial interest from the partition or division of land by the parent [or] child." Id. § 6001(14)(A)(iv).[9] This statutory "assumption that there is an affiliation between parent and child may be refuted," but the burden of refuting this presumption falls on the parent or child opposing its operation. Shenandoah, No. 245-10-08 Vtec, slip op. at 8. Therefore, unless Appellants are able to refute the statutory presumption that they are to be treated as one "person" under Act 250, then the lots included in the parents' lot count will likewise be attributed to the sons.

In regard to the three-lot subdivision resulting in the creation of Lots 1-A, 1-B, and 1-C, the Court concludes that the sons and parents should not be considered one "person" and therefore the three lots created by that subdivision are not attributed to the sons. The affidavits and other evidence submitted by Appellants show that the sons have not received, and will not receive in the future, any consideration or benefit from the subdivision of their parents' residential lot into three new lots. See, e.g., Mary & Peter Baldwin Aff. ¶ 12 (stating that the parents "have not paid to [the sons], nor have [they] agreed to pay them, any compensation or consideration of any kind, now or in the future, with respect to the three lots created by our subdivision of the House parcel"). Furthermore, as Matthew and Daniel are adult sons, who are not claimed by their parents as dependents, they have not and will not receive any "collateral benefit"

---

[9] "Person" also includes "individuals and entities affiliated with each other for profit, consideration, or any other beneficial interest derived from the partition or division of land." 10 V.S.A. § 6001(14)(A)(iii). According to the evidence submitted by Appellants, however, the parents and sons have never been "entities affiliated with each other for profit, consideration, or any other beneficial interested derived from" the parents' 2008 three-lot subdivision, which created Lots 1-A, 1-B, and 1-C, or Peter Baldwin's 2008 four-lot partition subdivision, which created Lots 4, 5, 6, and 7. Therefore, § 6001(14)(A)(iii) is not applicable in this instance.

16

from the parents creation of Lots 1-A, 1-B, and 1-C. See <u>Shenandoah</u>, No. 245-10-08 Vtec, slip op. at 5 (finding that the parents in that case would receive a "collateral benefit" from the benefit received by their minor, dependent children and therefore the parents and minor children were one "person" under Act 250). In this unopposed motion for summary judgment, all of Appellants' uncontested statements of fact are taken as true. These uncontested facts are sufficient to overcome the rebuttable presumption that the parents and sons are one "person" under § 6001(14)(A)(iv). Accordingly, the three-lot subdivision of the parents' residential property is not attributed to the sons.

On the other hand, as for the four-lot partition that created Lots 4, 5, 6, and 7, the Court concludes that the sons and parents should be considered as one "person" with regard to that division of land and therefore those four lots must be attributed to the sons. As previously discussed, Appellants will be considered to be one "person" for the purposes of Act 250 jurisdiction unless it is shown that the sons "will derive no profit or consideration, or acquire any other beneficial interest" from the four-lot partition subdivision done by Peter Baldwin. 10 V.S.A § 6001(14)(A)(iv). Although Appellants claim that the sons have not and will not receive any benefit from the creation of the four new lots, the sons in fact received a benefit from the partition subdivision when Peter Baldwin conveyed two of the resulting subdivided lots to them on August 10, 2009. Therefore, because the sons received the benefit of ownership of land resulting from the partition subdivision, the parents and sons are considered to be one "person" in regard to that subdivision. Accordingly, the four lots created are attributed to the sons, which brings their "lot count" under Act 250 to four lots at the present time.

At present, the sons have not created any other lots that must be included in their individual lot counts. Although the sons' application proposing a three-lot subdivision of Lot 4 is currently pending before the DRB, it does not yet increase their lot counts at

this time because none of the four conditions in Act 250 Rule 2(B)(1) has occurred.[10] Accordingly, Matthew and Daniel Baldwin each have a present lot count of four lots for Act 250 purposes.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Peter and Mary Baldwin each have a lot count of seven—three from the subdivision of their residential lot and four from the partition subdivision of the property co-owned by Peter Baldwin and his sister—which does not trigger Act 250 jurisdiction over their property at this time. Because Matthew and Daniel Baldwin derived a benefit from the four-lot partition subdivision, those lots are also attributed to them and their current lot count is four lots, which likewise does not trigger Act 250 jurisdiction over their property at this time. As the issue of whether any future lots created by Matthew and Daniel Baldwin will be attributed to their parents is beyond the scope of the present appeal, Question 5 of the Statement of Questions is dismissed.

Done at Berlin, Vermont, this 6th day of May, 2010.

_Merideth Wright_

Merideth Wright
Environmental Judge

---

[10] If the sons further pursue the three-lot subdivision of Lot 4 and one of the four conditions in Act 250 Rule 2(B)(1) occurs, then it will result in the creation of new lots that will necessarily be included in their lot counts. As discussed above, the Court does not reach the issue of whether these future new lots, if and when "created" for Act 250 purposes, will also be attributed to the parents.

18

